WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

**VIA ECF**

June 3, 2026

Hon. Loretta A. Preska
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Hon. Margaret M. Garnett
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Benson v. Islamic Republic of Iran*, No. 26-cv-2327 (LAP)
*Kim v. The Democratic People's Republic of Korea*, No. 25-mc-527 (MMG), Dkt. No. 56

Dear Judge Preska and Judge Garnett:

The *Benson* Plaintiffs write in response to the *Kim* Movants'[1] letter of June 3, 2026 (ECF No. 54 in 26-cv-2327; ECF No. 73 in 25-mc-527) (the "*Kim* Letter"), including to correct a mischaracterization of the record that may be relevant to the pending assignment question.

As the Court is aware, the *Benson* Plaintiffs sought and obtained a writ of attachment in that applies the assets held in two cryptocurrency wallets (the "Attached Assets"). (ECF No. 47 in 26-CV-2327; ECF No. 66 in 25-MC-527, hereinafter the "*Benson* Letter"). The *Kim* Movants do not dispute that the *Benson* Plaintiffs were the first creditors to identify those assets and the first to seek and obtain judicial relief with respect to those assets, all in the *Benson* action. And the *Kim* Movants appear to agree with the *Benson* Plaintiffs that their turnover motion and the *Benson* action are related because they seek relief with respect to the same property and that "judicial efficiency would be forwarded by both matters being decided by the same judge." *Kim* Letter at 2.

As the *Benson* Plaintiffs have previously stated, despite any administrative complications involving competing civil and miscellaneous cases (which Plaintiffs understand are not ordinarily covered by this Court's related-case rule), in a circumstance where one Judge has already issued an order affecting specific property, future requests for relief relating to that property should typically be assigned to that same Judge, for the same reasons that this Court ordinarily assigns

[1] For clarity, in light of the multiple sets of parties discussed in this letter who are parties in the related *Kim* actions, the term "*Kim* Movants" refers to the movants in the turnover motion filed at ECF No. 56 in No. 25-MC-527 (the lead case among the related *Kim* actions). Somewhat confusingly, the plaintiffs in that lead case, (i.e., the *Kim* plaintiffs who lent their name to the related actions), are not among the movants in the turnover motion involving the assets at issue here and therefore not among the "*Kim* Movants" discussed in this letter. This letter accordingly differentiates the "*Kim* Movants" and the parties who are plaintiffs in the lead *Kim* action.

later-filed civil cases to the Judge presiding over the earlier-filed related case. *Benson* Letter at 2.[2] Of course, the *Benson* Plaintiffs defer to the Court's ultimate determination about how to handle the relatedness issue in these circumstances, although the *Benson* Plaintiffs are doubtful that the expansive and potentially limitedness rationale proposed by the *Kim* Movants for assignment to Judge Garnett—that one Judge should preside over all cases "concern[ing] attempts to collect terrorism judgments against crypto assets," *Kim* Letter at 4—represents a sensible application of the Court's related case rule.

The *Kim* Movants assert a further basis for assigning these cases to Judge Garnett in particular, which compels the *Benson* Plaintiffs to correct a significant (though perhaps inadvertent) mischaracterization of the record. The *Kim* Movants write that "it appears that determining priority in this case may concern the effect of [the *Kim*] Plaintiffs' writs of execution and their recently granted motions for alternative service," and that "the *Benson* Plaintiffs may, therefore, contend that their writs prevail simply because Judge Preska granted a motion for alternative service of [their] writ on Tether before [Judge Garnett] did so, all at the same time as [Judge Garnett] was awaiting guidance from the assignment committee on whether to consider Plaintiffs' cases together." *Kim* Letter at 2.

That is wrong. Setting aside the *Kim* Movants' characterizations of the *Benson* Plaintiffs' possible future arguments, which the *Benson* Plaintiffs will address should the need arise, the time elapsed between the initial motion for alternative service on Tether in the lead *Kim* action and the granting of that motion could not be relevant to any dispute between these parties (much less support the *Kim* Movants in such a dispute). And it is irrelevant to the assignment question currently before the Court. That is so because unlike the plaintiffs in the lead *Kim* action, the *Kim* Movants—that is, the judgment creditors of Iran whose miscellaneous registration dockets have been deemed related to the main *Kim* action, and who are the movants in the turnover motion subject to this relatedness dispute—*did not bring* any alternative service motion until after the *Benson* Plaintiffs had already obtained, served, and levied their writ.

While it is true that other judgment creditors in the related *Kim* actions (specifically, the plaintiffs in the lead registration action, 25-MC-527)[3] filed a motion for alternative service on Tether on February 20,[4] that motion related only to those creditors' writ of execution to enforce their judgment against North Korea.[5] The North-Korea-creditor-plaintiffs in 25-MC-527 are not among the *Kim* Movants who brought the turnover motion subject to this relatedness dispute.[6] As the "*Kim* Movants" who *are* among the relevant movants have acknowledged, *they* did not join

---

[2] As the *Benson* Plaintiffs stated in their initial letter, they addressed that letter to Judge Preska both because Judge Preska had been the first to issue an order affecting the property in question, but also because the *Benson* Plaintiffs understand that *Benson* had been assigned to Judge Preska as related to No. 10-cv-4518. *Benson* Letter at 1 & n.1.

[3] That alternative service motion was brought only by the plaintiffs in No. 25-MC-527, *i.e.*, the original *Kim* Plaintiffs. Confusingly, the present group of claimants going by the name of "*Kim* Parties," referred to in this letter as the *Kim* Movants, do not include those original *Kim* plaintiffs, *see* 25-MC-527, ECF No. 73, at 3, although the *Kim* Movants' own judgment registration actions have been related to the lead *Kim* action with docket number 25-MC-527. So the *Kim* Movants who are parties to the present dispute with the *Benson* Plaintiffs did not seek any alternative service relief relating to their own writs of execution until May 5, even though the original *Kim* plaintiffs in 25-MC-527 did file such a motion on February 20.

[4] 25-MC-527, ECF No. 13.

[5] *See id.*; *see also* 25-mc-527, ECF No. 13-2, ¶ 1)

[6] 25-MC-527, ECF No. 1; ECF No. 56-1, at 1, n.1.

the alternative service motion until May 5.[7] That was one week after the *Benson* Plaintiffs had obtained their Amended Order of Attachment and delivered it to the Marshal, and the Marshal had levied it on Tether.[8]

In other words, even if the February 20 motion for alternative service on Tether in the lead *Kim* action had been granted immediately, it could have affected only the sole North-Korea-related writ as to which it sought relief, and could have had no effect on the present group of *Kim* Movants' writs of execution against Iran. Meanwhile, the *Kim* Movants with judgments against Iran did not move for alternative service until *after* the *Benson* Plaintiffs had established priority in the Attached Assets. Any delay between May 5, when the *Kim* Movants sought alternative service with respect to their Iran-related writs, and June 2, when that relief was granted,[9] cannot have affected the *Benson* Plaintiffs' rights in property that they attached and levied upon on no later than April 29. Accordingly, there will be no occasion for the presiding Judge to consider the effect of that delay, even to the extent this issue would be a basis to favor assignment to one Judge over another.

Respectfully submitted,

/s/ Aaron E. Nathan

Michael J. Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3000
mgottlieb@willkie.com

Nicholas Reddick (*pro hac vice* pending)
Willkie Farr & Gallagher LLP
333 Bush St.
San Francisco, CA 94104
(415) 858-7400
nreddick@willkie.com

Lee S. Wolosky
Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Ave
New York, NY 10019
(212) 728-8000
lwolosky@willkie.com
anathan@willkie.com

---

[7] 25-MC-527, ECF No. 71, at 1; *compare Kim* Letter at 3 (listing the "*Kim* Parties" who are movants in the relevant turnover motion), *with* 25-MC-527, ECF No. 48 (those same parties joining the February 20 alternative service motion on May 5).
[8] 26-CV-2327, ECF Nos. 36, 52.
[9] 25-MC-527, ECF No. 72.