UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREDERICK C. BENSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ISLAMIC REPUBLIC OF IRAN, et al.<br><br>Defendants. | No. 26-cv-2327 (LAP) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR ALTERNATIVE SERVICE**

Pursuant to Federal Rule of Civil Procedure 4, Plaintiffs respectfully move for an order authorizing alternative service on Defendants of the summonses and complaint (collectively, the "Summons and Complaint"), in the same manner that the Court has already approved for other documents in this case: a special-purpose token delivered to Defendants' cryptocurrency wallets (the "Service Token"), which will contain a hyperlink to a website that Plaintiffs' counsel have created and on which they will publish the documents to be served. In addition, and to the extent the service provisions of the Foreign Sovereign Immunities Act apply to a TRIA claim like this one, in an abundance of caution Plaintiffs request that in addition to Rule 4 the Court also authorize the proposed method of service pursuant to 28 U.S.C. § 1608(b)(3)(C).

## BACKGROUND

Plaintiffs filed this action to satisfy a portion of judgments they have been awarded against the Islamic Republic of Iran under Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), which permits them to attach and execute on assets of agencies or instrumentalities of Iran. Defendants are the John Doe owners of two cryptocurrency wallets—the "TNiq Wallet" and the "TTiD Wallet" (together, the "Wallets")—that Plaintiffs identified through their investigation

as likely agencies or instrumentalities of Iran. As set forth in Plaintiffs' Motion to Confirm the Order of Attachment, it now appears from the factual record that those John Does are likely none other than the Central Bank of Iran ("CBI"), a well-established agency and instrumentality of Iran. *See* ECF No. 40 at 7-13.

Plaintiffs filed the operative Amended Complaint on April 26, 2026. ECF No. 28. On April 28, 2026, the Court granted the operative Amended Order of Attachment (the "Amended Order of Attachment," and together with the March 22 Order of Attachment, the "Order of Attachment"). ECF No. 35. The Court also authorized an alternative method of providing Defendants with notice of the Order of Attachment, as well as Plaintiffs' Motion to Confirm the Order of Attachment and supporting confirmation papers, by "provid[ing] notice via a special-purpose token or tracking link (the "Service Token"), delivered or airdropped into each [wallet]. The Service Token shall contain a hyperlink (the "Service Hyperlink") to a website Plaintiff's counsel will cause to be created, wherein Plaintiff's counsel shall publish the Confirmation Papers." *Id.* at 21.

Meanwhile, Plaintiffs have diligently prepared to serve the Summons and Complaint but have faced difficulties arising from both the anonymity of Defendants, which is an intentional feature of their use of the Wallets to shield their identities and evade U.S. and international sanctions, and the ongoing military conflict in the Middle East, which has caused international mail and courier services to suspend all delivery services to Iran. *See* Declaration of Aaron E. Nathan ("June 4 Nathan Decl."), at ¶¶ 10-15 & Exs. 11-15; As a result, Plaintiffs cannot proceed with traditional methods of service, including personal service or service by mail.

## ARGUMENT

### I. Alternative Service Is Warranted Under Rules 4(f) and 4(h)(2).

Service on individuals and corporations located in foreign countries is governed by Federal Rules of Civil Procedure 4(f).[1] "The Rule does not impose any order of priority among [its] three subsections. Each is of equal dignity and, in particular, the Rule does not require a party to exhaust efforts to serve pursuant to Rules 4(f)(1) or 4(f)(2) before seeking an order under Rule 4(f)(3)." *Convergen Energy LLC v. Brooks*, No. 20-cv-3746 (LJL), 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020) (citations omitted). "In other words, Rule 4(f)(3) is merely one means among several which enables service of process on an international defendant and is neither a 'last resort' nor 'extraordinary relief.'" *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 512 (S.D.N.Y. 2013) (cleaned up).[2]

Under Rule 4(f)(3), a court has wide discretion to authorize alternative service provided the method "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Zhang*, 293 F.R.D. at 514 (cleaned up). A method satisfies due process if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (cleaned

[1] *See also* Fed. R. Civ. P. 4(h)(2) (authorizing service on a corporation in a foreign country "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery").

[2] Even if such "exhaustion" were required, service under Rules 4(f)(1) and (f)(2) would be impossible because Iran is not a party to the to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"), and there is no other applicable convention for service in Iran. June 4 Nathan Decl. ¶ 9; *see Zhang*, 293 F.R.D. at 512 (observing that "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies") (cleaned up). And personal service and service by any form of mail requiring a signed receipt are likewise unavailable because, as a result of the ongoing military hostilities in Iran, all international mail and courier services have suspended shipments to the country. June 4 Nathan Decl. ¶¶ 11-15 & Exs. 11-15; *see* Apr. 16, 2026 Min. Order, *Philippon v. Islamic Republic of Iran*, No. 1:26-cv-00242 (D.D.C. Apr. 16, 2026) (finding that certified mailing service in Iran "is currently stymied, because all international carriers have suspended shipments to Iran," and authorizing alternative service via email under 28 U.S.C. § 1608(b)(3)(C)).

up). "So long as substitute service achieves these goals, a court is afforded wide discretion in ordering service of process under Rule 4(f)(3)." *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD)(SN), 2022 WL 1088567, at *3 (S.D.N.Y. Apr. 5, 2022) (cleaned up).

That standard is easily satisfied here. Iran is not a signatory to the Hague Convention, but in any event, neither the Hague Convention nor any other applicable international agreement or treaty bars service using Plaintiffs' proposed method. *See Meghji v. Wallet Owner (In re Celsius Network LLC)*,666 B.R. 28, 34, 36 n.6 (S.D.N.Y. 2024) (authorizing service via NFT).[3] And the proposed method is reasonably calculated to provide Defendants with notice of this action.

Indeed, delivery of the Service Token directly to the Wallets themselves is the surest way to provide actual notice of these proceedings to Defendants. Service via non-fungible tokens ("NFTs") is particularly appropriate where blockchain transactions are the most reliable available means of communication with John Doe defendants. *See In re Celsius Network LLC*, 666 B.R. at 35; *People v. Unknown Parties*, 238 N.Y.S.3d 113, 118 (N.Y. Sup. Ct. 2025). A similar form of service, email service, "has [] repeatedly been found by courts to meet the requirements of due process." *Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380 (PGG) (OTW), 2019 WL 6498305, at *3 (S.D.N.Y. Dec. 2, 2019); *see, e.g.*, Apr. 16, 2026 Minute Order, *Philippon*, No. 1:26-cv-00242 (D.D.C. Apr. 16, 2026) (authorizing email service on the Central Bank of Iran); *Crescent Petroleum Co. Int'l Ltd. v. Nat'l Iranian Oil Co.*, No. 22-cv-1361 (JMC), 2024 WL 1885498, at *6 (D.D.C. Apr. 30, 2024)authorizing email service on National Iranian Oil Company). NFT

[3] The proposed method is also tailored to "minimize[] offense to foreign law." Fed. R. Civ. P. 4(f)(3) advisory committee's note (1993 amendment); *see Moriarty v. Hashemite Kingdom of Jordan*, No. 18-CV-2649 (CKK), 2024 WL 3010850, at *4 (D.D.C. June 14, 2024) ("[R]egardless of whether [a particular method] is proper in Jordan, service must only *minimize* offense to foreign law, not avoid it completely.") (cleaned up). Indeed, as discussed below, the proposed method is consistent with Iranian law. *Infra* at II(B)(2).

service is likely *more* effective than email service: Because "each wallet is a pseudonymous identifier of a single wallet-holder, and only that individual who owns a private key to a given wallet can access the wallet," service via NFT is "akin to—if not superior to—service via email." *In re Celsius Network*, 666 B.R. at 35. Numerous courts have thus found service via NFTs like the Service Token to be reasonably calculated to provide notice to defendants. *See id.*, at 31-32, 38.[4]

Further, in this case the evidence demonstrates that the proposed method is not only reasonably calculated to provide notice, but has already succeeded in doing so when it was used earlier in this case. Pursuant to this Court's prior order authorizing such service, Plaintiffs caused a service token to be sent to Defendants' wallets on May 11. ECF No. 43, at 2; *see* June 4 Nathan Decl. ¶ 4 & Exs. 1-2 (showing those transactions). On May 19, between 11:42 UTC (7:42 AM EDT) and 11:59 UTC (7:59 AM EDT), Defendants attempted six transfers USDT out of *both* wallets—but failed, because the USDT was frozen. June 4 Nathan Decl. ¶¶ 5-7 & Exs. 3-8. Notably, within 7 minutes of each other, each wallet attempted multi-million-dollar transfers of USDT ($2 million and $3 million, respectively) to the *same destination wallet* (TSSy). *Id.* ¶¶ 6-7 & Exs. 6, 8.

Those attempted transfers show two things: first, of course, given the coordination of those transactions and the identical attempted destination, the two John Doe Defendants are, in fact, the same entity. *Id.* And second, Defendants have accessed their wallets since the first Service Token was sent there, meaning that they very likely already have actual notice of this action, and an

[4] *See also, e.g.*, *Chow v. Defendant 1*, No. 24-CV-480, 2024 WL 3225917, at *1 (E.D. La. Apr. 19, 2024); *CipherBlade, LLC v. CipherBlade, LLC*, No. 3:23-CV-00238-JMK, 2024 WL 69164, at *3 (D. Alaska Jan. 5, 2024); *Polansky v. Defendant 1*, No. 23-21852-CIV, 2023 WL 5951838, at *3 (S.D. Fla. Aug. 31, 2023); *Stil Well v. Defendant "1"*, No. 23-21920-CIV, 2023 WL 5670722, at *2-3 (S.D. Fla. Sept. 1, 2023); *Unknown Parties*, 87 Misc. 3d at 954; *LCX Ag v. 1.274M U.S. Dollar Coin*, 2022 WL 3585277, at *2 (N.Y. Sup. Aug. 21, 2021).

awareness that communications regarding this action may be transmitted by Service Token to their wallets. The proposed method of service is accordingly not just reasonably calculated, but highly likely to provide actual notice to the Defendants in this action.

## II. The Court Should Also Approve This Method Under 28 U.S.C. § 1608(b)(3)(C).

Given the likelihood that, in addition to being agencies or instrumentalities of Iran under the TRIA's broader definition of that term, the Defendants are also an agency or instrumentality of Iran under the FSIA's narrower definition, there is a corresponding likelihood that Defendants would ordinarily have to be served in accordance with 28 U.S.C. § 1608(b). While it is not clear that Section 1608 applies to a TRIA action, *see Havlish v. Taliban*, 152 F.4th 339, 358-61 (2d Cir. 2025) (holding that TRIA applies "[n]otwithstanding any other provision of law" and therefore supersedes the FSIA's jurisdictional and execution immunity provisions), Plaintiffs' proposed method is consistent with Section 1608(b) as well, and in abundance of caution the Court should authorize the proposed method under that provision as well.

### A. Service Under 28 U.S.C. §§ 1608(b)(1)-(2) and (b)(3)(A)-(B) Is Unavailable.

Section 1608(b) of the FSIA governs service of process on an "agency or instrumentality of a foreign state." *First*, service may be effectuated "in accordance with any special arrangement between the plaintiff and the agency or instrumentality," 28 U.S.C. § 1608(b)(1), but no such special arrangement exists here. June 4 Nathan Decl. ¶ 9. *Second*, delivery may be made to someone "authorized by appointment or by law to receive service of process in the United States" or "in accordance with an applicable international convention on service of judicial documents"—neither of which exist here. 28 U.S.C. § 1608(b)(2); *see* June 4 Nathan Decl. ¶ 9.

### B. The Proposed Method Satisfies Section 1608(b)(3)(C).

Where, as here, service under subsections (b)(1) and (b)(2) is impossible, then the agency or instrumentality may be served "by delivery of a copy of the summons and complaint, together

with a translation of each into the official language of the foreign state . . . as directed by order of the court consistent with the law of the place where service is to be made," so long as the method is "reasonably calculated to give actual notice." 28 U.S.C. § 1608(b)(3)(C).[5] As is well established, "'substantial compliance' is the touchstone for effective service under § 1608(b)." *In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567, at *7 (S.D.N.Y. Apr. 5, 2022); *see First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 55 (2d Cir. 2002) ("Although compliance with the service requirements may not have been exact, they were substantial and sufficient.").

1. *The Proposed Method Is Reasonably Calculated to Provide Actual Notice.*

Under 28 U.S.C. § 1608(b)(3), court-ordered service must be "reasonably calculated to give actual notice" to the defendants. For the same reasons discussed above, *see supra* § I, service on CBI via the Service Token is reasonably calculated to provide actual notice to Defendants.

2. *The Proposed Method Is Consistent with Iranian Law.*

Furthermore, service via the Service Token is "consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3)(C). "A method of service is 'consistent' if it is 'not prohibited under' the country's laws—there is no requirement that it be 'identical to the method prescribed by the foreign state.'" *Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-

[5] In other circumstances, Plaintiffs might otherwise resort to 28 U.S.C. § 1608(b)(3)(B), which requires the Clerk of the Court to dispatch copies of the summons and complaint to the agency or instrumentality using a form of mail requiring a signed receipt, but in these circumstances that is impossible: as noted above, international mail and courier services have suspended shipments to the country. June 4 Nathan Decl. ¶¶ 10-15 & Exs.11-15. Adapting to this very same circumstance, another federal court recently authorized email service on CBI under 28 U.S.C. § 1608(b)(3)(C). *See* Apr. 16, 2026 Min. Order, *Philippon*, No. 1:26-cv-00242 (D.D.C. Apr. 16, 2026) (finding that "[m]ailing pursuant to § 1608(b)(3)(B) is currently stymied, because all international carriers have suspended shipments to Iran," and granting alternative service via email on CBI). Other courts have likewise recognized that alternative service under Section 1608(b)(3)(C) is proper where a breakdown in a country's services renders mail service impracticable. *See In re Terrorist Attacks on Sept. 11, 2001*, 2022 WL 1088567, at *6-7 (authorizing alternative service via email and social media on the Central Bank of Afghanistan pursuant to Section 1608(b)(3)(C) and Rule 4(h)).

mc-00405 (LGS) (SN), 2023 WL 6173524, at *8 (S.D.N.Y. Sept. 22, 2023) (quoting *New England Merchants Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 78 (S.D.N.Y. 1980)). "[I]f a mode of [alternative] service is not prohibited under Iranian law, and is a means whereby those in charge of the defendant agencies or instrumentalities would receive notice of the action and an adequate opportunity to defend it," it is "permissible under the FSIA." *New England Merchants*, 495 F. Supp. at 79.

In Iran, service of process is governed by the Law on the Procedure of General and Revolutionary Courts (in Civil Matters) ("Iranian Civil Procedure Law"). June 4 Nathan Decl. ¶ 8 & Exs. 9-10; *see* Fed. R. Civ. P. 44.1. In "Topic 2 – Service of Process," sections 67 through 83 provide numerous methods of service tailored to different circumstances, including personal service by court officer, service on a responsible individual at a residence or workplace, service by agreement between the parties, and service by registered mail. June 4 Nathan Decl. Ex. 10, at 1-4. Importantly, if a plaintiff is unable to determine the defendant's address, section 73 provides that "upon the plaintiff's request and by order of the court, the contents of the complaint shall be published once in a widely circulated newspaper at the plaintiff's expense." *Id.* at 2. In addition, where a defendant "resides within the jurisdiction of another court," section 77 provides that "the complaint and its attachments shall be served by the clerk's office of that court by *any available means*." *Id.* at 3 (emphasis added). Section 71 likewise provides for service of a complaint outside of Iran, "through embassy personnel or by *any available means*[.]" *Id.* at 1 (emphasis added).

In sum, the Iranian Civil Procedure Law prescribes service by publication (and the NFT service analogously involves publishing the documents to be served on a website), provides broad grounds for methods of alternative service, and contains no provision prohibiting service by electronic means such as the Service Token. Plaintiffs' proposed service method here is thus

"consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3)(C); *see Stansell*, 2023 WL 6173524, at *8.

Several courts have likewise approved alternative service on Iranian agencies or instrumentalities via electronic means, including email and telex message, to comport with 28 U.S.C. § 1608(b)(3)(C). *See* Apr. 16, 2026 Min. Order, *Philippon*, No. 1:26-cv-00242 (D.D.C. Apr. 16, 2026) (email); *Crescent Petroleum*, 2024 WL 1885498, at *6 (email); *New England Merchants*, 495 F. Supp. at 78 (telex); *Int'l Schs. Serv. v. Gov't of Iran*, 505 F. Supp. 178, 179 (D.N.J. 1981) (authorizing telex service on Iranian agencies or instrumentalities and reasoning that "[m]odern technology, with communications satellites and other sophisticated devices, ought not to be deprived the opportunity to attempt effective service, if it can."). Accordingly, the Court should authorize Plaintiffs to effectuate service on Defendants via the Service Token pursuant to 28 U.S.C. § 1608(b)(3)(C), and further order that future documents required to be served under Rule 4 or 28 U.S.C. § 1608, including service of any motion for default judgment under 28 U.S.C. § 1608(e), may also be made by the same means.[6]

**CONCLUSION**

For the foregoing reasons, the Court should authorize service under Federal Rule of Civil Procedure 4 and 28 U.S.C. § 1608(b)(3)(C) as set forth in the attached proposed order.

[6] Plaintiffs intend to serve any further documents required to be served on Defendants under Federal Rule of Civil Procedure 5 by filing them with the Clerk of Court via ECF and uploading them to the website linked to the NFT Service Token, and respectfully request that the Court confirm the adequacy of these methods in its Order as well.

Respectfully submitted,

Dated: June 4, 2026

/s/ Aaron E. Nathan

Michael J. Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3000
mgottlieb@willkie.com

Nicholas Reddick (*pro hac vice* pending)
Willkie Farr & Gallagher LLP
333 Bush St.
San Francisco, CA 94104
(415) 858-7400
nreddick@willkie.com

Lee S. Wolosky
Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Ave
New York, NY 10019
(212) 728-8000
lwolosky@willkie.com
anathan@willkie.com

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(c), and Rule 2(B) of the Court's Individual practices, the undersigned certifies that the foregoing memorandum of law contains 2,412 words, as determined by the word-count function of Microsoft Word.

June 4, 2026 /s/ Aaron E. Nathan