# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

**VIA ECF**

June 10, 2026

Hon. Margaret M. Garnett
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *Benson v. Islamic Republic of Iran*, No. 26-cv-2327 (MMG)

Dear Judge Garnett:

In light of this action's recent reassignment to Your Honor, Plaintiffs respectfully submit this status report, including a brief summary of the motions pending for the Court's decision.

## Background

Plaintiffs are 1,335 U.S. military servicemembers, or their surviving family members, who were victims of terrorist attacks sponsored by the Islamic Republic of Iran. Plaintiffs hold money judgments against Iran entered in various actions in the U.S. District Court for the District of Columbia, which include compensatory damages awards totaling approximately $10.5 billion. Plaintiffs brought this action pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), which provides that where plaintiffs hold a judgment against a "terrorist party" (here, Iran), "the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable." TRIA § 201(a), codified at note following 28 U.S.C. § 1610.

Where, as here, plaintiffs holding judgments against the *terrorist party* seek to execute on blocked assets of a third-party *agency or instrumentality* of the terrorist party (*i.e.*, an agency or instrumentality who is not named in the underlying judgment against the terrorist party), such plaintiffs cannot simply rely on a writ of execution issued in aid of the underlying judgment: instead, they must bring an independent TRIA claim against the agency or instrumentality, and can attach the agency or instrumentality's property in aid of that independent TRIA claim. *See Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 96-99 (2d Cir. 2022); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 47-50 (2d Cir. 2010); *see generally Peacock v. Thomas*, 516 U.S. 349, 357 (1996) (the federal courts' ancillary jurisdiction to enforce their judgments does not extend to a proceeding "to impose liability for a judgment on a third party"). That is the course Plaintiffs have pursued here.

BRUSSELS   CHICAGO   DALLAS   FRANKFURT   HAMBURG   HOUSTON   LONDON   LOS ANGELES
MILAN   MUNICH   NEW YORK   PALO ALTO   PARIS   ROME   SAN FRANCISCO   WASHINGTON

Seeking to enforce their judgments under TRIA, Plaintiffs conducted an investigation to identify cryptocurrency wallets belonging to suspected agencies or instrumentalities of Iran. On March 20, Plaintiffs filed this action under seal, initially naming as defendants the anonymous owners of 814 cryptocurrency wallet addresses. As relevant here, one of those wallets—a wallet with address TNiq9AXBp9EjUqhDhrwrfvAA8U3GUQZH81 (the "TNiq Wallet")—contained by far the greatest monetary value, totaling approximately $212 million worth of USDT. Plaintiffs were also aware, through their investigation of public blockchain data, of significant transactional connections between the TNiq Wallet and another wallet with address TTiDLWE6fZK8okMJv6ijg42yrH6W2pjSr9 (the "TTiD Wallet"), although the TTiD Wallet was not subject to the original complaint.

On March 22, Judge Preska (then sitting in Part 1) entered an order of attachment without notice pursuant to Federal Rule of Civil Procedure 64 and CPLR 6211(a). ECF No. 22 (the "March 22 Order"). Plaintiffs delivered that order of attachment to the Marshal on March 23. ECF No. 25, at ¶ 2.[1]

On April 23, Tether announced that "in coordination with OFAC and U.S. law enforcement," it had "supported the U.S. government in freezing $344 million USDT." ECF No. 41, at ¶ 6. The two frozen wallets were the TNiq Wallet (containing a little over $212 million USDT) and the TTiD Wallet (containing a little over $131 million USDT). On April 24, OFAC sanctioned both wallets, updating its designation of the Central Bank of Iran ("CBI") to identify the TNiq and TTiD Wallet addresses as CBI's digital wallet addresses. ECF No. 41, ¶ 7 & Ex. 2. OFAC's designation had at least two significant effects with respect to Plaintiffs TRIA claims: it removed any doubt about whether the assets held in the TNiq and TTiD Wallets were "blocked" within the meaning of TRIA, and also identified the property held in those wallets as property of CBI, a well established "agency or instrumentality" of Iran.

Because the approximately $344 million of USDT held in the TNiq and TTiD Wallets already represented the lion's share of the total value at stake in this action, and because those holdings' status as "blocked assets of an[] agency or instrumentality of" Iran was now assured, Plaintiffs elected to narrow this enforcement action to focus on the assets held in the TNiq and TTiD wallets. Accordingly, Plaintiffs filed an amended complaint on April 26, naming only the owner(s) of the TNiq Wallet and TTiD Wallet as defendants and dropping the other anonymous wallet holders. ECF No. 28.[2]

---

[1] On March 25, Judge Preska's Chambers informed Plaintiffs' counsel by email that this action had been assigned to Judge Preska as related to No. 10-cv-4518.

[2] The Amended Complaint also dropped Iran as a defendant. ECF No. 28. The original complaint had named Iran as a defendant for judgment-domestication purposes, because Plaintiffs had not yet registered their judgments in this District under 28 U.S.C. § 1963, and instead relied on New York common-law procedure of an "action on the judgment" to domesticate their judgments in this Court. ECF No. 16, at ¶¶105-111; *see* CPLR 5406. By the time the Amended Complaint was filed, Plaintiffs had registered their judgments in this District, rendering it unnecessary to pursue an "action on the judgment" against Iran. *See* Amended Complaint ¶ 6 & n.4.

Plaintiffs also sought an amended order of attachment applying to the assets in those two wallets, which Judge Preska granted on April 28. ECF No. 35 (the "Amended Order of Attachment," and together with the March 22 Order of Attachment as amended, the "Order of Attachment"). Plaintiffs delivered the Order of Attachment to the Marshal shortly after 1:00 PM on April 29, and the Marshal levied the Order on Tether the same day. ECF Nos. 36 ¶ 2; 52.

Because the Order of Attachment was granted without notice to the Defendants pursuant to CPLR 6211(a), Plaintiffs were required to file a motion to confirm the Order "on such notice as the court shall direct." CPLR 6211(b). Plaintiffs filed their motion to confirm on May 11. ECF Nos. 39-41. As directed in the Order of Attachment, Plaintiffs served the motion to confirm and supporting papers on Defendants by transmitting a special-purpose token (the "Service Token") directly to Defendants' wallet addresses, including a link to a website where the relevant documents are posted. ECF No. 43 ¶ 2. The deadline to oppose the motion to confirm was May 26, 2026. ECF No. 35, at 21; Local Civil Rule 6.1(b). No opposition has been filed or served.

**Pending Motions**

The following motions are currently pending before the Court:

- ***\*Expedited Decision Requested\* Plaintiffs' Motion for Alternative Service of Summons and Complaint (ECF Nos. 56-58) (filed June 4, 2026).*** Plaintiffs have moved for leave to serve the summons and complaint on Defendants under Rule 4 and 28 U.S.C. § 1608(b)(3)(C) by the same alternative means that the Court has already approved for purposes of the service of the Motion to Confirm: transmission to Defendants' wallet addresses of a Service Token containing a link to a website on which the relevant documents are posted. As set forth in Plaintiffs' motion for alternative service, it is now apparent that the owner(s) of the Defendant wallet addresses have accessed their wallets since that Service Token was sent, and indeed have attempted multi-million dollar transactions out of each wallet (each to the same destination wallet, no less). ECF No. 57, at 5; ECF No. 58, at ¶¶ 5-7. This indicates that the proposed method of service is reasonably calculated to provide Defendants with actual notice and, indeed, has already done so when Plaintiffs previously used it at the Court's direction in this case. *Id.*

  As Plaintiffs explained in their letter of June 4 (ECF No. 59), Plaintiffs have respectfully requested prompt, *ex parte* consideration and decision of this motion because, under CPLR 6213, Plaintiffs would have to serve the summons and complaint by July 20, 2026. Although there is significant doubt as to whether CPLR 6213 applies in federal court, Judge Preska previously extended that deadline in an abundance of caution. ECF No. 44.

- **Plaintiffs' Motion to Confirm the Attachment (ECF Nos. 39-41) (filed May 11, 2026).** Plaintiffs' motion seeks an order confirming the Order of Attachment pursuant to CPLR 6211(b). Plaintiffs served the motion on Defendants by the means directed in the Amended Order of Attachment, *i.e.*, by transmitting a Service Token to the Defendants' wallet addresses. The deadline to oppose the motion to confirm was May 26, 2026. ECF No. 35, at 21; Local Civil Rule 6.1(b). No opposition has been filed or served. Because the deadline to respond expired 14 days ago, and because the standard for confirmation is amply satisfied by the record, the Court can and should proceed to grant the motion as unopposed.

- **Motion of Nicholas Reddick to Appear Pro Hac Vice (ECF No. 60) (filed June 5, 2026).**

**Other Potential Claimants**

As far as Plaintiffs are aware, they are the first judgment creditors of Iran to seek or obtain any relief with respect to the TNiq or TTiD Wallets or the specific assets therein. They are also the first to seek, obtain, deliver, and levy a writ directed at those assets in compliance with *Peacock*, *Weinstein*, and *Levinson*.

As the Court is aware, one other group of creditors (the "*Kim* Movants") holding judgments against Iran has filed a motion relating to the assets held in the TNiq and TTiD Wallets in this Court. *See Kim v. Democratic People's Republic of Korea*, No. 25-mc-527 (MMG), ECF No. 56. Since that time, at least two other groups of creditors have sought judicial relief relating to the same assets:

*First*, several additional judgment creditors holding judgments against Iran (all represented by the same counsel at Cohen Milstein Sellers & Toll PLLC) have sought writs of attachment in the U.S. District Court for the District of Columbia, all after the Order of Attachment was granted in this case. *See Relvas v. Islamic Republic of Iran*, No. 14-cv-1752-RCL (D.D.C. May 11, 2026), ECF Nos. 106-07; *Encinas v. Islamic Republic of Iran*, No. 18-cv-2568, (D.D.C. May 14, 2026), ECF No. 68; *DiBenedetto v. Iranian Ministry of Info. & Sec.*, No. 16-cv-2429-TSC, (D.D.C. May 14, 2026), ECF Nos. 59. Plaintiffs have filed notices in that Court alerting the presiding judges to this Court's prior exclusive jurisdiction over the assets. *See*, *e.g.*, *Relvas*, ECF No. 116; *Encinas*, ECF No. 75; *DiBenedetto*, ECF No. 68; *see also Benson*, ECF No. 47, at 3 n.2. In *DiBenedetto*, the Court granted a writ of attachment on June 2, before Plaintiffs became aware of the *DiBenedetto* Plaintiffs' motion for the writ. *DiBenedetto*, ECF No. 61. Plaintiffs have alerted the *DiBenedetto* Court of this Court's prior exclusive jurisdiction and asked that the *DiBenedetto* Court vacate the writ, *DiBenedetto*, ECF No. 68; the *DiBenedetto* Plaintiffs have responded without disputing this Court's prior exclusive jurisdiction and instead asking the D.C. court to stay or transfer their claim, *DiBenedetto*, ECF No. 71. Plaintiffs will reply to that response shortly.

Meanwhile, several (if not all) of the plaintiffs represented by Cohen Milstein have since filed miscellaneous judgment-registration actions in this Court, to the extent they had not already done so. *See, e.g. DiBenedetto v. Islamic Republic of Iran*, No. 26-mc-247 (MKV) (S.D.N.Y.); *DiBenedetto v. Islamic Republic of Iran*, No. 26-271 (JLR) (S.D.N.Y.); *Encinas v. Islamic Republic of Iran*, No. 26-mc-272; *Relvas v. Islamic Republic of Iran*, No. 20-mc-303 (RA) (S.D.N.Y.). Their attorneys have also sought leave to file a new civil case under seal, see *ABC v. DEF*, No. 26-mc-263 (VSB) (S.D.N.Y.), although Plaintiffs are (of course) unaware of the nature of the proposed civil action, whether it was filed, and whether any relief was sought relating to the TNiq or TTiD Wallets.[3] In Plaintiffs' view, all cases and requests for relief relating to the assets held in the TNiq or TTiD Wallets should be assigned to Your Honor, to ensure that a single Judge is able to hear and determine any disputes relating to that property. *See* ECF Nos. 47, 54, 55.

---

[3] The same attorneys have also filed other judgment-registration actions on behalf of other judgment creditors of Iran. *See Christie v. Islamic Republic of Iran*, 26-mc-259 (JPO) (S.D.N.Y.); *Schooley. v. Islamic Republic of Iran*, 26-mc-00260 (RA) (S.D.N.Y.); *In re Webb*, 26-mc-269 (S.D.N.Y.).

*Second*, Plaintiffs have just become aware that that, on June 9, a group of Iran judgment creditors (the "Havlish Judgment Creditors") have filed a motion before Judge Daniels seeking an order "pursuant to 28 U.S.C. § 1610(c)" authorizing them to "enforce their Judgments against each Judgment Debtor in their respective judgments by any lawful means, including the attachment of, or execution on," the assets in the TNiq and TTiD Wallets. *See In Re: Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (SN), ECF Nos. 12105-12107 (June 9 & 10, 2026).

Plaintiffs' counsel is available to answer any questions that the Court may have.

Respectfully submitted,

/s/ Aaron E. Nathan

Michael J. Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3000
mgottlieb@willkie.com

Nicholas Reddick (*pro hac vice* pending)
Willkie Farr & Gallagher LLP
333 Bush St.
San Francisco, CA 94104
(415) 858-7400
nreddick@willkie.com

Lee S. Wolosky
Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Ave
New York, NY 10019
(212) 728-8000
lwolosky@willkie.com
anathan@willkie.com