UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FREDERICK C. BENSON; DANIEL CABRERA; CORBIN CABRERA; GILLIAN CABRERA; MAXWELL GAVAN CABRERA; ROANIN XANDER CABRERA; ROBERT CABRERA; JARED LEMON; KAELIN E'MI LEMON; FRANK LEMON; JACKIE LEMON; BENJAMIN LEMON; MATTHEW LEMON; NATHAN LEMON; AUGUST WILDMAN; SUZANNE MARTINEZ; JD PROSSER; GLORIA TRELFA; RYAN TIMONEY; DIANE TIMONEY; GREGORY TIMONEY; KEVIN KING; STEPHANIE MILLER; JONATHAN RICHARD COLTON BENTON; ELIZABETH LINDSEY BENTON; S.J.B.; G.S.B.; H.S.B.; CARLENE RENEE CROSS; MICHAEL DEAN BOGAR; MICAEL D. GAUGER; CARISE RENEE MARTINDALE; MARY JOSEPHINE BROSTROM; DAVID BROSTROM; JASE DAVID BROSTROM; BLAKE D. BROSTROM; JEFF CARON; KAREN LYNN DOVE; CASSANDRA MALENE CARON; LESLY YOHANA GARCIA; MARICRUZ GARCIA VELASQUEZ; VICTOR GARCIA; RAMSSES GARCIA; JENNA RENAE VANOSDALE; ERIC M. HUNTER; KENNA DANIELLE HUNTER; KENSLEY JADE HUNTER; JAYCE WESLEY HUNTER; BETTY DARLENE BLACK; JOEY J. HUNTER SR.; JOEY J. HUNTER II; NICHOLAS WALTER ROBINSON IV; RENDA LYNN RAINEY RIGGINS; CHRISTOPHER BALDRIDGE; JESSIE BALDRIDGE; E.B.; L.B.; S.B.; JASMIN BAYS; APRIL ANGEL BAYS; TIMOTHY LEE BAYS; BRENDA LEE BAYS; LINDSAY REDOUTEY; ROBERT CHARLES DARROUGH; JUDITH SARAH DARROUGH; JOELLE RENE ELLIS; JOHN FITZGERALD ELLIS; JAMES EARL ELLIS; AMANDA JOLYNN CAMPBELL; ESTATE OF DONALD EDWARD NEWMAN SR.; MICHELLE MARIE ZIMMERMAN; CHRIS LEE ZIMMERMAN; BAILY NICHELLE ZIMMERMAN-POOR; BEVERLY ANN MILLS; CYNTHIA CAROL CAMPBELL; MARY ROANA HAMMERBACHER-NICHOLS; CYNTHIA | No. 26-cv-2327 (MMG) **SECOND AMENDED COMPLAINT** |

MARIE NICHOLS; DOUGLAS NICHOLS; NICOLE ANN ROBLES; MONTE DOUGLAS NICHOLS; BRANDON LEE NICHOLS; IDA BELLE PITTMAN; JOHN TERRY PITTMAN SR.; DANIEL MARK ROBINSON; DONNA MAE ROUSH; ROBERT GRAHAM ROUSH JR.; ROBERT GRAHAM ROUSH III; ANNETTE JANINE SPEHAR; PATRICK R. SPEHAR; MARIE SENTINA SPEHAR; LISA MARTINUSEN; LUKE HERBERT SPEHAR; JACOB LOUIS SPEHAR; CHARLES WESLEY STRANGE; KATELYN MARIE STRANGE; CHARLES WESLEY STRANGE III; CARLY ELIZABETH STRANGE; CATHERINE KIMBERLY VAUGHN KRYZDA; C.C.V.; R.C.V.; HORTENSE KAINOA WAINANI VICKERS; KAWAILANAMALIE MARY GRACE VICKERS; KAIAKAKU'UIKALA'IOKEALOHA NOAH VICKERS; MARY JANE VICKERS; ESTATE OF ROBERT MARTIN KAHOKULANI VICKERS SR.; MICHELLE JOY KAPUNAHELEOKALANI YARBOROUGH; ROBERT MARTIN KAHOKULANI VICKERS JR.; MARK MATTHEW KALEINANI VICKERS; ESTATE OF KURT E. ZWILLING; ALEXANDER EDWARD ZWILLING; HARVEY LANE WALLS; MARY ROMANO; BRENT C. ROBINSON; JEANINE HILTON; CHRISTOPHER ALEXANDER PALMATEER; MARJORIE ELIZABETH VAIL; CRYSTAL DAWN DELEO; JESSIE HERNANDEZ; CATHY ANN PARSONS; GARLAND RICHARD PARSONS; DONNA JEAN RIMER; JAMES HOWARD RIMER; SHANNON DANIELLE FENTON; ALEJANDRO OLAN GRANADO IV; HASSON PONCE GRANADO; AMANDA CHRISTINE GRANADO; LARISSA ANN BARNHART; BRITTANY EVANS; CRYSTAL NICOLE EVANS; JONATHAN DEWAYNE ROGERS; JERRY RANDALL EVANS SR.; AMY LYNETTE ALLEN; DANIEL BRUCE ALLEN; RANA GOODRICH ALLEN; KIM B. COX; SHARON J. COX; SHANNON BUTLER; JAMIE SMITH; DEANNDREA LUNEY; DEIONTAY LAUNDREEK WELCH;

CRAIG ANTHONY SMITH; THELMA LATRICE SMITH; STEVEN FLOWERS JR.; ANNETTE PARRISH; JALANE ADAMS; PETER ADAMS; AMANDA BOONE; ANTOINETTE MARY FRANCIS COFFLAND; DAVID LEE COFFLAND SR.; LAURIE ANN BARTLETT; KAREN ANN BRESNAHAN; AMBER JEAN ROGERS; G.J.C.; TAYLOR MCKENZIE CHRISTIAN; DONNA BALL; MICHAEL CHRISTIAN; JAMES FRANKLIN BALL; MICHAEL AARON CHRISTIAN; ROSE ANN CROSSMAN; ANDREW FORESTER SLACK; JESSE ROBERT SLACK; JONATHAN HUNTER SLACK; LAUREN RACHEL SLACK; JESSICA JEAN COOK; ALEKSANDR CADE KISSELOFF; MICHAEL RAMOS KISSELOFF; MILAGROS D. KISSELOFF; LESLIE RODRIGUEZ; RAVEN GEORGE; MARTIN E. MADDEN; PAMELA J. MADDEN; LINDSEY R. MADDEN; MARTIN P. MADDEN; DIEDRE MARIE SPENCER; HEATHER L. REED; DAVID REED; TRACY BENNEDSEN; SCOTT BENNEDSEN; JAMIE JOHANNA COATES; VERONICA MARIE ADKINSON; ALMA MURPHY; PAUL MURPHY; TENNYSON CHARLES HARRIS; SORAINYA HARRIS; FELICIA ANN HARRIS; TIFFANY DOTSON; DAVID L. PARKER; ASHLEY MICHELLE HARRIS; MICHAEL RUFUS II; STEPHANIE RUFUS; ALYSON OVERMAN RODGERS; THOMAS PIERCE MAYS; TAMMY RENEE MAYS; CODY CHEYENNE MAYS; ESTATE OF GLADYS DEL VALLE MONTANEZ; RENES PEREZ; KIARA CRYSTAL PEREZ DEL VALLE; GEORGANNE M. SIERCKS; GAGE SIERCKS; G.S.; KIMBERLY METCALF; CLARENCE JOSEPH METCALF; MITCHELL L. STAMBAUGH; TALISA SHERVON WILLIAMS; CLARENCE WILLIAMS JR.; ABRILL RENEE RAYFORD; SAMANTHA SHERVON WILLIAMS; RANDY RISTAU; SUZANNE RISTAU; CHRISTOPHER POWERS; HALIE BIVER; SONGMI KIETZMANN; BENJAMIN GABRIEL HORSLEY; JOHN GREGORY HORSLEY; KIRK ANDREW GOLLNITZ; JAN MARIE HURNBLAD

SPARKS; ERIK LEE SPARKS; GARRY LEE
SPARKS; JANE GIESELMAN SPARKS;
ZACHARY DOUGLAS SPARKS; COLLEEN
WHIPPLE; MARY BETH SMEDINGHOFF;
THOMAS JOHN SMEDINGHOFF; MARK T.
SMEDINGHOFF; BRUCE K. NICHOLS;
JEANNE M. NICHOLS; MOLLY G. NICHOLS;
LORRIA WELCH; BARRY WELCH;
ZACKARY WELCH; KATHRYN MARY
PUCINO; ALBERT W. PUCINO JR.; LISA M.
HAGLOF; MELISSA A. PUCINO; SYLVIA
MCGEE; THOMAS MCGEE; COREY MCGEE;
TRACY LEE CARRICO; TIMOTHY DAVIS;
STEPHANIE FRANCES BOVA; BILLIE
SHOTLOW; MICHAEL SHOTLOW; WRENITA
RANDALL; EDIENA MCGEE; ROBERT A.
BIRD; CHARLES EDWARD BLANEY;
DIANNE BELK MASSEY; CARLEY BLANEY;
JANE BERRETTINI; CHRISTOPHER
BERRETTINI; VINCENT BERRETTINI;
MICHAEL BOWEN; LORI DEYSIE; SIDNEE
DEYSIE; NANCY M. TRIMBLE; TIMOTHY M.
TRIMBLE; HOLLI JEAN JENSEN; LYNNE
FARMER; JOY L. RETMIER; STEVEN C.
RETMIER; MASON D. RETMIER; MATTHEW
S. RETMIER; JOSE ANTONIO VAZQUEZ SR.;
JANICE VAZQUEZ; JOSE VAZQUEZ JR.;
ROBERT WATSON JR.; LISA MURAWSKI-
DUPONT; MARK P. DUPONT; ESTATE OF
JONATHAN O'NEILL; JACQUELINE
O'NEILL; ROBERT O'NEILL; BRIAN
O'NEILL; KAITLYN O'NEILL; MATTHEW
O'NEILL; DONNA BLAIR; DALLAS BRYANT;
SONDRA ANDREWS; GWENDOLYN
FRENCH; LAQUITTA FRENCH; GINA
BERISFORD; M.B.; SHELLEY GUTHRIE;
DAVID AARON CROW; EVELYN TAYLOR;
JOSE ALEMAN; STEPHANIE SPILLMAN;
SONJA MCDANIEL; MATTHEW MCDANIEL;
CHARLETTE GILBERT; CHARMAINE RENEE
GILBERT; JORDAN GILBERT; JASMINE
THOMAS; THOMAS PRIOLO; ESTATE OF
JOHN WAYNE EWY; DENNIS JOHN ELM;
DONNA LEE ELM; CATHERINE ELM
BOATWRIGHT; MARGARET ELM
CAMPBELL; MATTHEW ELM; CHRISTINE

RANGEL; JEFFREY WHITE SR.; PAULA WHITE; KYLE WHITE; ESTATE OF MICHAEL WHITE; JONATHAN CLEARY; APRIL CLEARY; C.F.; KELLAN THOMAS FOGARTY; STEPHANIE FISHER; THOMAS FOGARTY; BRIAN EDWARD ELLIS; JULIE ANN SANDIFER; VANESSA MARIE ANZURES; VICTOR RAYMOND ELLIS; BRIAN LAMBKA; KRISTIE SURPRENANT; BOB SURPRENANT; JERRY HARDISON; JUSTINA GAIL SANDERSON; PAUL ELMER JAYNE; SHERRY A. SKEENS; KENT ALAN SKEENS; ADAM MATTHEW JAYNE; AYZIA J. JAYNE; GARRETT A. SKEENS; TRENT LORNE SKEENS; Z.R.S.; CASSIE MARIE RICHARDSON; BRANDON KORONA; WILLIAM NEVINS; ANGELA KAHLER; AMBER DAWN MORELAND; HALLIE MAY COMBS; TRENTON DEAN COMBS; MEGAN STEPHENS; SIENNA MARIE STEPHENS; HELEN DEPRIMO; JOSEPH DEPRIMO; JODI CALABRO; DANIELLE FEDIW; ALMUTH CORNELIUS GREEN JR.; ESTATE OF PATRICIA GREEN; JESSE GREEN; KIMBERLEY A. WHIPPLE; DAVID WHIPPLE; BRIAN CLYBURN; SEAN WHIPPLE; ANN L. GOULD; ESTATE OF JAMES A. GOULD; MARY BORDER; KATHERINE ABREU-BORDER; DELAYNIE K. PEEK; NATALIE SCHMIDT; A.L.S.; LEE ANN SCHMIDT; PHILLIP J. SCHMIDT; BRANDON TYLER SCHMIDT; WILLIAM MICHAEL BURLEY; TAMMY OLMSTEAD; DANIEL OLMSTEAD; MICHAEL COLLINS; MARTHA CAROLINA SMITH; THOMAS ELMER WICKLIFF; MICHELLE CAROLINA ROTELLI; JEFFREY SCOTT KUYKENDALL; LARRY KUYKENDALL; K.L.F.; ROBERT LENTZ; RUTH M. HARTON; DONALD DAY; KATHLEEN ANN DAY; MICHAEL SOUFRINE; DAVID LAU; HAMIDE LAU; K.L.; MARIGONA KEILANI LAU; VIVIAN PERRY; HOLLY ABRAHAM; LEROY LAU JR.; MICHELLE LEE RAUSCHENBERGER; CHRISTOPHER ROSEBROCK; ALEX JASON ROZANSKI; RICHARD ALLEN CAULEY;

CLIFFORD TAYLOR; KYLE TAYLOR; MARK BAKER; REBECCA E. BAKER; MARK DAVID BAKER; TAYLOR GENOVESE; ROBIN HEFNER; BRANDON DALE HEFNER; JESSICA MEAGAN HEFNER; TODD TAYLOR; STEPHANIE FREEMAN; ROSA IRMA HALLIDAY; BRAD JOSEPH HALLIDAY; JON CENTANNI; DAVID FINGAR; RHONDA G. FINGAR; BUFORD JEREMIAH FINGAR; DONALD JOSHUA FINGAR; CRAIG LEICHT; SHIRLY A. LEICHT; ELIZABETH C. LEICHT; JESSE H. LEICHT; JONATHAN LEICHT; MARY ROSE LEICHT; SARAH GRACE ORMAND; CHRISTEN HOLLEY; ALYSSA SHERIDAN; ANDREW SHERIDAN; CHARISSA DELGIORNO; DOMINIC GIACCHI; TAMARA ANNE BOYETT; TERRY LYNN BOYETT; JULIA OTT; LACEY JORDAN; T.J.J.; CARMEN LOUISE O'LEARY; ANTOINETTE DRAKULICH; JOSEPH DRAKULICH; THOMAS DRAKULICH; DANA RENEE DRAKULICH; MICHELLE M. NICHOLAS; CHRISSY PRADO; LOGAN MICHAEL PRADO; OWEN MICHAEL PRADO; CARLY SUE GONZALEZ; ALLY MAY PRADO; KIMBERLY SOUTHWORTH; ROBERT SOUTHWORTH; MICHAEL SOUTHWORTH; CHRISTINA NIKOLE GUERRERO; DAVID SHANFIELD; PAMELA SHANFIELD; SYDNEY SHANFIELD; MICHAELA J. TAYLOR; SARAH BETH MILLER MORGAN; BART LARUE HOWARD; CONSTANCE LOUISE HOWARD; ALEXANDER JAMES HOWARD; OLIVIA MARIE HOWARD; DUANE SCHULTZ; CAMERON WEST; JAMES FARRIS CULLINS JR.; BARBARA SCHILLING; COOPER CULLINS; DONAVAN CULLINS; CHRISTOPHER BILLMYER; CHERYL BILLMYER; JAMES BILLMYER; DON HERNANDEZ; JAMES REGINALD CAMPBELL; CYNTHIA PYEATT; LON SCOTT PYEATT; EMILY SMALLEY; TEDDI DEYOUNG; ANGELA RITA MARIE ROGERS; KATIE C. FREEMAN; K.M.F.; W.D.F.; BRIAN FREEMAN; JOSEPH D. GARRISON; JAMES

BOUCHER JR.; JAMES BOUCHER SR.; KIMBERLY BOUCHER; BRITANY BOUCHER; JAMES L. DANIELS; HEATHER DANIELS; LUCAS DANIELS; SOPHIE DANIELS; CYNTHIA RICHMOND; ROBERT L. DUNNING; ESTATE OF TOMOE DUNNING; JOY COY; ANTHONY D'AUGUSTINE; PATRICIA D'AUGUSTINE; NICOLE D'AUGUSTINE; MICHELE KULESA; BRADLEY IVANCHAN; CHRISTOPHER VAN ETTEN; JONATHAN ASHLEY III; TAMMIE ASHLEY; JONATHAN ASHLEY IV; JORDAN ASHLEY; SARAH PETERS DUARTE; GINA DUARTE; JOSEPH DUARTE; HELENA DAVIS; C.J.D.; NANCY ROUGLE; RYAN NEWELL; HANNAH COX; EVA FARR-WALLACE; CALVIN D. JAMISON; ATARAH WRIGHT; DEAN COLEMAN; BLAINE A. REDDING; GLENDA WILLARD; MICHELLE HOCK; RANEE MASSONI; JORDAN PLUNK; JUSTIN T. PLUNK; TERRY MITTLER; JOYCE TURNER; MISTY BARCLAY; MARTA TORRES; JOSE NEGRON; MARIBEL NEGRON; GLENN CHISHOLM; LINDA REYNOLDS; KARMA CHISHOLM; BETHANY ANN BENTON; DINEEN SNYDER; EDWARD SNYDER; DAMIEN EDWARD SNYDER; NATASHA SNYDER; FRANCISCO JAVIER BRISEÑO GUTIERREZ; LUIS BRISEÑO ALVAREZ; JAMES HENDERSON; ATHENA GORDON; PATRICIA ELSNER; MARK ELSNER; KELSEY THOMAS; JACQUELINE ALLEN; MARK ANTHONY ELSNER; ESTATE OF MICHAEL K. INGRAM SR.; JULIE INGRAM; CHERYL SPIVEY; CORBIN WAYNE HUNT; PATRICIA A. NICOL; ROLAND N. NICOL; ALAINA NICOL; ROLAND J. NICOL; CHERYL M. CULBRETH; WALTER L. CULBRETH; LAUREN ASHLEY CULBRETH; MELISSA RODRIGUEZ; DEREK RODRIGUEZ; KATELYN RODRIGUEZ; RODOLFO RODRIGUEZ SR.; KEYKO D. CLARK; CORTEIZE CLARK; PRECIOUS CLARK; KEVIN TRIMBLE; JOHN L. FANT; ANDREA KESSLER; JOSE ALBERTO MORGADO; ANNA BANZER; SOFIA

KESSLER; ERIC MORGADO; CONNOR ALEXIAN MORGADO; ADOLF OLIVAS; BETHANY ROSE EVANS; SAMANTHA MCNAMARA; BRENDA DAEHLING; KIRK DAEHLING; ADAM DAEHLING; KAYLA MARIE DAEHLING; JOANNA GILBERT; JESSICA BENSON; ADAM HARTSWICK; SEAN HARTSWICK; MORGEN HUMMEL; NANCY MULLEN; MIRIAM A. MULLEN; WILLIAM J. MULLEN; RICHARD BRUNKHORST; ARTHUR CAMPBELL; AUDREY CAMPBELL; TINA MARIE CAMPBELL; RAMIRO CARDOZA SR.; MARIA CARDOZA; RAMIRO CARDOZA, JR.; PATRICIA DAHL; ANGEL DAHL; CRAIG LANE GROSS; NATALIE ANNE GROSS; JORGE FIDENCIO HIDALGO; ANDREA JEAN HIDALGO; LARRY DEAN HORNS; TAMARA ELAINE HORNS; TIFFANY LOUISE HORNS; CHERYL BROWN; MIRANDA SHAE; JANET LANDRUM; G.B.L.; B.R.L.; CHESTER PAUL MURACH; WILLIAM ANTHONY MURACH; HUGH DEAN NEENAN; LESA COON NEENAN; NANCY R. WILSON; ASHLEY GERDING; DENNIS W. PETERS; DEBORAH JEAN PETERS; G.R.P.; CHRISTINE H. PHILLIPS; S.N.P.; JANIE RABALAIS POWELL GONCALVES; JOSEPH WILLIAM PRESCOTT; AARON WILLIAM PRESCOTT; JACOB RICHARD PRESCOTT; JOSHUA MICHAEL PRESCOTT; KIM SMITH; BENJIMAN SMITH; SARAH NGIRAIBIOCHEL; LARRY MICHAEL SOLESBEE; TRINA SOLESBEE; JOHN ANDERSON HALL; JILL MYERS; ALYSSA MARIE LOWSON; DONN ALDEN WEAVER; JEANNE WEAVER; GLENN ALLEN WEAVER; ADRIANNA GRETCHEN VARGO; KRISTIA NELL WEAVER; JOHN MELVIN WEST; MARCIA MARY WEST; KRISTINE MARIE WILLIS; CLINT COLEMAN WILDES; JAMIE ELIZABETH SURLES; REGINA MICHELE WRIGHT; SAMUEL BOAZ BROWN; SCOTT BROWN; TANYA BROWN; MOLLY BROWN; ANDREW BROWN; LUKE BROWN; DAUS ISAIAH HEMPKER; JESSE WATSON; ROBERT SCHULTE; SUSIE

SCHULTE; TODD SCHULTE; SUZANNA
AUSBORN; MITCHELL MALOY; SUMMER
MALOY; ALICE FAYE AUSBORN; SUSAN
BRODEUR; DAVID LAWRENCE BRODEUR
JR.; ELIZABETH L. BRODEUR; JOYCE A.
BRODEUR; LAWRENCE A. BRODEUR; TODD
BRODEUR; AMANDA BRODEUR
BROTHERTON; ERNEST BROWN II; JIM
ARTHUR JACOBS; GLADYS VEREEN;
CHRISTOPHER BAPTIST; LAGUANDA
JACOBS; JANICE HARRIMAN BRYANT;
S.L.B.; TAMMIE SCHOONHOVEN; ANJELIKA
MARIE SCHOONHOVEN; A.R.S.; DEBORAH
SCHOONHOVEN; PATRICIA GOINS; PAUL
EDWARD GOINS III; EMMITT DWAYNE
BURNS; JANICE CARUSO; DANA RAINEY;
KATHLEEN LYNN ALEXANDER; DANIEL
OWEN HUGHES; PATRICIA HUGHES;
KRISTINE ANNE ZITNY; MICHELLE RILEY;
RODNEY RILEY; NATASHA BUCHANAN;
L.A.E.L.B.; S.L.L.B.; DOUGLAS A.
LANDPHAIR; JEAN S. LANDPHAIR;
MEREDITH LEAGUE; KELLI-JO DODGE;
B.C.D.; PEYTON AMANI DODGE;
KATHLEEN MCEVOY; MICHELLE ROSE
MCEVOY; PATRICK CHARLES MCEVOY;
JANICE H. PROCTOR; LUANN VARNEY;
ERIN MADDEN; SUMMER SUTTON;
HARRIET SUTTON; TRECIA BROCK HOOD;
WENDY SHEDD; FREDDIE SUTTON;
KIMBERLY BLAMIRES; DANIKA LEAH
BLAMIRES; KALLI BLAMIRES; SANDRA
BLAMIRES; BEAU BLAMIRES; ERIC
BLAMIRES; ETHAN BLAMIRES; NEIL
BLAMIRES; JULIE MCGRAW; SARAH
MOSCHLER WALTON; REUBEN ERIC
SHARP; ANGELA PRESTON; GUS PRESTON;
RUSSELL GLENN YANNEY; R.A.R.;
CHRISTAL A. THOMAS-KARIKER; EDWARD
KARIKER; LEON WILLIAMSON III; SYBIL B.
WILLIAMSON; PEGGY PAGAN; ESTATE OF
ROBERT PAGAN SR.; ROBERT PAGAN JR.;
LOWELL HANSON JR.; CYNTHIA HANSON;
MEGAN KATHLEEN DOHN; JUDITH ROWE
GENTZ; ANTHONY CURTIS WHITE;
ANTHONY EVAN WHITE; LAURA WHITE;

ZACHARY LUKE WHITE; BEVERLY WISNIEWSKI; CHESTER WISNIEWSKI JR.; CRAIG STANLEY WISNIEWSKI; MATTHEW WALTER WISNIEWSKI; RAUL OLIVARES JR.; LESLEY OLIVARES; DALYLAH RUBEY OLIVARES CASTILLO; JULIE MAGANA; BILLY MICHAEL STOUT; MELISSA KEENER; NORMAN KARCH; JORDAN GAGE ALLISON; SHERRY LOAN; LINDA PHANEUF; MIRACLE BURTON; DAMEN SNOW; RICHARD DENNIS; MARIA MIX; AMANDA DENNIS-SILVA; ANGELICA MIX; VIRGINIA NEWSOM; KYLE BALDUF; GLORIA HENSLEY; A.L.H.; ELLA MICHELLE HENSLEY; NORA ROSE HENSLEY; JOAN THELMA HENSLEY; TERRY L. HENSLEY; MICHAELA HENSLEY; NICOLE GOLDSMITH; KRISTEN A. ELWELL; ELISE MARIE ELWELL; NICKOLAS BRIAN ELWELL; SUSAN BURKHARD; DARIUS JOHNSON; JUDY B. WILLIAMS; KIA CUSACK; CATHERINE MULLINS; THOMAS MULLINS; BETHANY ROSE MULLINS RANDALL; SUNI CHABROW; KRISTIN CARACCIOLO; PAIGE ERLANGER; FREDERICK TOLON; JAMES BELL; LONDON JACINDA BELL; THERESA KARLSON; CHARLES ESSEX; MARION RUTH HOPKINS; CHERYL ATWELL; ERIN RIEDEL; LONA L. GAMBONE; CEDRIC F. GORDON; CONCHETTA MICHELL DIAZ; CEDRIC D. GORDON SR.; ADRIAN KIE-ALUN SHERROD; ESTA SMITH; JOE TORIAN; ESTATE OF JIMMY SMITH; EMILY TORIAN; NATHAN EWELL TORIAN; ALEXANDRA MCCLINTOCK; D.C.M.; JOYCE PATRICIA PAULSEN; GRACE KREISCHER; BRIANNE BARLOW; JASON BARLOW; SAGE RIVER SALADIN; SHUSHAWNDRA GREGOIRE; JOHN GREGOIRE SR.; JOHN DAMIAN GREGOIRE JR.; GERALD W. FINLEY; JOSHUA M. FINLEY; JENNIFER M. LEFORS; MARIA L. AVNERI; JACOB AVNERI; EDUARDO G. GARCIA; CHARLOTTE ALLEN; MATTHEW ALLEN; AUSTIN NELAMS; LAUNA LEE CHAVEZ; CHARLES LYNN

STILES; MARIA CECILIA STILES; NATALIE MICHELLE SCHOENING; CHARLES STILES II; KENNETH J. STILES; ABIGAIL G. STEFFEY; DENNIS STEFFEY; RACHEL HUMPF; DAVID HUMPF; HEATHER JACKSON; HOLLY CONRAD; B.C.; ABBY KNAPP-MORRIS; K.K.; ELMA GARZA PALOMAREZ; CANDIDO PALOMAREZ III; OMAR PALOMAREZ; RENE PALOMAREZ; LINDA K. GRIECO; RALPH GRIECO; JENNIFER GRIECO BURCH; FREDDA LYNN JONES; JAMERIUS DEWAYNE JONES; KENDERRICK JONES; MARIUS RASHADD WASHINGTON; I'KEMEYON CROW; SHEILA MCCARY; JASMINE HYATT; TRISTYN ANTHONY VINSON-HOSFORD; FELICIA WILLIAMS; DERLYSA WILLIAMS; VICTORIA TOLBERT; VANECIA MITCHELL; LISA LEE FREEMAN; MARGARET ANDERSON; DENNIS JOHNSON; ALEXIS JOLENE QUISENBERRY; JAMES A. GRADY; JAMES MICHAEL GRADY; KEVIN GRADY; BRIAN M. MARTIN; JULIE K. MARTIN; CATHERINE G. MARTIN; ELIZABETH A. MARTIN; SHELBY IUBELT; V.I.; CHARLOTTE LOQUASTO; J.A.L.; JULIANNE GOOD PERRY; G.W.P.; L.R.P.; KATHLEEN PERRY; STEWART LAMAR PERRY; ANITA THERESE PERRY; GAIL PROVOST; MEGHAN JANET HOLLINGSWORTH; SARAH TIFFANY PETERSON; BRIAN PROVOST; SPENCER DANA PROVOST; ESTATE OF GERTRUDE PROVOST; JUDITH L. ASHLEY; MARY JANE G. MEDEIROS; PAUL PROVOST; SCOTT PETER PROVOST; SUMMER DUNN; HANNAH MASON; MALLORY WILLIAMS; CHARLOTTE ANN REEVES; VICTORIA JANE REEVES; JOYCE ANN TULLOCH; CAITLIN ELIZABETH ANDERSON; L.G.A.; BOBBY GENE ANDERSON; PATRICIA MARLENE GOODWIN; APRIL LYNN ANDERSON; ESTATE OF BOBBY JOE ANDERSON; JOHN DAVID ANDERSON; JOHN WAYNE GOLDSMITH; LORIE GOLDSMITH; BRIAN HARPER; ANGELA HARPER; HOLLY

HARPE; JOSEPH HULSEY JR.; LISA ROWE
HICKS; STEVEN WALLS SR.; GEORGE
MCCLINTOCK III; JOHN ZELKO III; JOHN R.
ZELKO JR.; KAREN SUZANNE ZELKO;
JENNIFER MARIE ZELKO; TRENT DONALD
ZELKO; GEORGIA PRIEST; STEPHANIE
HAYHURST; L.R.G.; ESTATE OF CLIFFORD
E. AUSBORN; ESTATE OF GABRIEL
NEGRON; ESTATE OF MARVIN NEGRON;
K.E.F.V.; A.M.P.; S.G.C.H.; C.L.K.; HOLLY
AMBER INGRAM; C.A.I.; MARC DERVAES;
MARTHA LOONEY; SHEILA G. GOOD;
CHARLES EVERETT ADKINS; VELVET LEE
ADKINS; CARLOS BENJAMIN GROSS RIOS
SR.; SOCORRO GROSS; CARLOS BENJAMIN
GROSS PANIAGUA; FELICIA GROSS
PANIAGUA; DEBRA ANN PEREZ; ADAN
MICHAEL PEREZ; ANTHONY DEAN PEREZ;
TRACY ANNE HERRING; ROBIN ELIZABETH
AKERS; NICHOLAS FRANCIS PEREZ;
CAROL GRIFFIN; SHAWN GRIFFIN; SHEILA
RISTAINO; DANIEL GRIFFIN; MATTHEW
GRIFFIN; LEAH A. TURNER; LYDA NIESHE;
CESAR G. ROBLES; CHELSEY JACKLYNN
MICHAEL; COLLIN CLEAVER; AIDAN
CLEAVER; PAULA BETTY RICH; REGINA
EMMA BROWN; MIRIATLIZ ROBERTS;
CARLOS ALCIDES CRUZ; JOEL CRUZ;
CARMELITA D. FERNANDO; GUSTAVO
ALFONSO SOLTERO SR.; ADRIAN
CARRILLO SOLTERO; ESTATE OF BECKY S.
POOCK; ROGER POOCK; BETSY REED
SCHULTZ; BRITTANY TAYLOR GARRISON;
CYNTHIA LOU HENDERSON; NIKI MARTIN;
LAVETTE CURRY; ARMANDO OCHOA;
EDUARDO OCHOA; ANDREA DIETZ;
CRISTINEMAE BARCEL MITTLER;
ALEXANDER MITTLER; JESUS INFANTE;
JESSICA INFANTE; JUAN INFANTE;
BRAYDON TYLER NICHOLS; DAVID
EDWARD BEAN; ROBERT RIVERA;
ALEXANDER LAU; JAMMIE JOANN SMITH;
GARRETT LAYNE FUNK; MICHAEL IUBELT;
JULIE MARIE BESSA; JOEL D. BESSA;
BRYANA ELYSE BESSA; KENDRA PIEPER;
DAVID PIEPER; KAILA CARRIER; SHERRY

JEAN PEPPER; PAUL WILLIAM GIRE; LAWRENCE STEPHEN MARTA; KARIN SUE STONE; TAYLOR STONE MARTA; THOMAS SCHWALLIE; SARAH MELINDA COOK; JOHN M. FINLEY; VIRGINIA LEE WIEDOWER; LANDON DOMINO; ESTATE OF MARTHA ANN EVANS; ROBERT EARL SMITH; ANDREA ELISABETH STEFFEY; DAVID LEE COFFLAND JR.; LYNN MARIE COFFLAND; DOLORES A. REED; CHRISTOPHER WAYNE JOHNSON; JULIANNA SYMKOWIAK; CORDARO DEVONE CLARK; JOAN MARIE SMEDINGHOFF; REGINA CATHERINE SMEDINGHOFF; TERESA LYNN BERNSTEIN; WRAYJEAN CARNES; AMANDA NICOLE MANASRA; GINGER KUTSCHBACH; BASTIAN TAYLOR KUTSCHBACH; MAREN HESLA; CINDY JEANNE LOHMAN; GARY EDWARD LOHMAN; NYZIA KIMORA WILSON; REGINA BYTHER; JANICE COCHRAN YORK; DEBORAH GOINS YOUNG; MICHAEL EVERETT STRATTON; FRANKLIN KELLY LITTLE; STEVEN MICHAEL STRATTON; SUSAN K. NOVAK; JESSICA NOVAK CRUZ; JACQUELINE B. THOMPSON; RANDOLPH D. THOMPSON; BRITTENY BULLOCK; LOUELLA ELIZABETH FRISON; TODD MCCLAIN HENIGAN; ALEX HENIGAN; SHANNON K. MCNULTY; ANGEL R. ROLDAN; SAMANTHA G. ROLDAN; MATTHIAS P. ROLDAN; ALISON R. POHN; JOHN C. MCCARTHY; ANNIE LOUISE MCBRIDE; CHESTER ROY MCBRIDE SR.; NICOLE KAMALESON; BARCLAY KAMALESON; CEDRIC PAUL KAMALESON; CADE KAMALESON; SUNDERRAJ MARK KAMALESON; GREGORY STUBE; GREGORY STUBE JR.; ESTATE OF ROBYN YOUNG; DENISE JOANNE WILSON; ERIC ALLEN VIETTI; DANIEL SCOTT VIETTI; MASHELLE LYNN LEMBKE; ALEXIS MARIE LEMBKE; THOMAS NATHANIEL LEMBKE; ESTATE OF ROBERT ROLAND LEMBKE; ENJOLIE WALLACE BATES; RYLIE NICOLE BATES;

B.H.B.; MARLINE O'BRIANT TULLY; DANA ATLAS; BRUCE ATLAS; JOHANNES ATLAS; SUMMER ANNESE ATLAS; SAVANNAH REIGN ATLAS; AIMEE ELIZABETH WOOD; J.E.M.; BARBARA JO HANKE; GREGORY ALLAN MCLEOD; JACQUELINE ANN MCLEOD; JUSTIN ALLEN MCLEOD; JACK PIERCE; KAREN LYNN PIERCE; W.P.; ALEXANDER PIERCE; CHRISTINE ANNE GRAVINA; JULIE SCHROCK; CHANDLER SCHROCK; RYAN DONAHUE; TAYLOR SCHROCK; SHARON K. ZAEHRINGER; NICOLE R. SCOTT; SUMER J. ROBERTS; SCOTT EUGENE REGELIN; SHIRENE REGELIN; JEREMY J. METZGER; BRIAN WILLIAMS; ESTATE OF LIONEL WILLIAMS; KEVIN WILLIAMS; MARK K. ROLAND; BARBARA A. ROLAND; ERICA M. ROLAND; ESTATE OF CRAIG ALLEN BLAMIRES; ERISA DEYSIE; ROSANNA ANTONIA TRIMBLE; STEFFANI ROSE TRIMBLE; MICAELA MARIE TRIMBLE; RONALDO DE LA ROSA; TIMOTHY F. NEENAN; KATHLEEN MARIE NEENAN; MARK ANTHONY WHITE; ESTATE OF TERI JOHNSON; MICHAEL DAVID STOUT; GINNY LAMB; ESTATE OF CONNIE DIANNE BECK HERZEL; DENNIS HEMPKER; JEWELYN HEMPKER; DELORIS SNOW; DOMINIC ARTHUR JACOBS; ESTATE OF FRANK D. BRYANT SR.; PATRICIA LIZETTA BRYANT; JAMES R. LANDRUM; MAGGIE BILYEU; ESTATE OF LOUIS PROVOST; JOHN A. PROVOST; RITA BLODGETT; CHRISTINA LINDEN; JASON ROCKHOLT; ADAM KISIELEWSKI; RITA ZOUCHA; BRANDON CLEVENGER; ROGER KURTZ; STEPHANIE KURTZ; NORMA ESTES; PATRICIA GRASSBAUGH; MICHAEL SUMMERS; NANETTE WEST; CLARK WEST; PATTY JETT; SHELIA TOWNS; SARAH LAMBERT; MARTHA CABE; DUANE PIONK; JONATHAN KRAUSE; GERALD KRAUSE; LISA KAUFMAN; ALEXANDRIA PARKS; FELICIA BELL CARTER; MICHAEL BELL; MILISSA WOJTOWICZ; VIRGINIA MAITLAND;

ASHLEY LEGRAND RAWLINGS; KELSIE MAE LEGRAND; KELLY INMAN; NATALIE JACKSON; ANDREW MARSHALL; SHEILA MARSHALL; BRANDI YANEZ; TARA ROBERTS; JACOB KOSKY; NANCY POULIN; NOE OROSCO, SR.; JOSEF PAUTSCH; BECKY JOHNSON; MARLA VAN CANNON; MICHAEL VAN CANNON; RICHARD GERVASI II; CHERYL FELDER STUART; MANASER ORTON; ALAN BEAN, SR.; NANCY KATHLEEN GODWIN; ESTATE OF WILLIAM GOODE GODWIN; ANNA GODWIN; AARON WILLIAM GODWIN; RHONDA GAIL MCCORMICK; LARRY MCCORMICK; BLAKE MCCORMICK; DEBBEE WAY; RICHARD LOUIS GIENAU; MARIA ODILIA ROMERO; JUAN DIEGO ROMERO; YAJAIRA ROMERO; BERNARDO ROMERO; THOMAS BENJAMIN MCELVEEN; MAUREEN WALSH; PATRICK THOMAS WALSH; JOSEPH MICHAEL WALSH; MEGHAN CATHLEEN TURNER; ERIN MARIE WATSON; JESUS VEGA; ANDREW BISSON; LAURALEE BISSON; RICHARD BISSON; CHRISTOPHER BISSON; RICHARD WITTEVEEN; TRENT WILLIAM WITTEVEEN; HEATHER KAUFMAN; ROBIN WALLACE; RICKEY WALLACE; SARAH WALLACE; RACHEL DAWN TUCKER; ESTEFANI VALDEZ; JOAN MARIE BEKOWSKY; BRIAN GLEN BEKOWSKY; HALEY SHANE WHITE; ZELLENE ALLRED; BRETT ALLRED; ADAM RALEIGH ALLRED; VICKEY MCCLEARY CHALUMEAU; ERIK JON GARDNER; MARJORIE PAUL; ANDREW SOLTAU; DESIREE SOLTAU; JAMES PERRY III; SCOTT PERRY; LAKIESHA PERRY-SMITH; RACHELE PALMER; BRAD PALMER; DUSTIN PALMER; ESTATE OF CONNER WALKER; JAMES WALKER; KASEY WALKER; KELLY WALKER MURRAY; IESHA AYRO; CHRISTINA BAKER; ERIC BELL; DEBORA BELL; CARL BRADFORD; TIMOTHY CAFFEY; NICHOLAS CAFFEY; CHASSADIE TUNSTALL; NANCY JO CLEVENGER; JOEL SEXTON-CRAIG;

PHYLLIS CRAIG; RACHAEL PUTMAN; MENESIA SPADE; KELLI WINKLER; DIANE SALYERS; RAO FELDER; STEPHANIE FORREST; BRADAN FORREST; J.F.; RACHEL HALL; ADDISON HALL; JAMES HARLAN; JACOB ROBERTS; APRIL MCCORKLE; RONDA SEXTON; GLENNA LEGRAND; MOIRA LEGRAND; LAURA MCBRIDE; MARSHALL MCBRIDE; CHASSITY MCCANDLESS; RONALD SUMNER; JACQUELYNE PAPPIN; MARGARITA ORTON; DAVID ORTON; SANDRA PIONK; MELANIE PIONK; JOSHUA PIONK; BRANDON PIONK; DILLON PIONK; ASHLEY PIONK; GALE LIGHT; ESTATE OF LYNN POULIN, JR.; MICHAEL POULIN; ESTATE OF SHERRY KAY ROCKHOLT; KELLI ANDERSON; KARA BELMAREZ; CARTER WEST; KRISTEN SIMON; SHERRI LASKA; DALE JOHNSTON; BRUCE DUANE SQUIRES; GAIL MARIE WILLIAMS; ALLISON GAIL MURPHY; PATRICIA ANN JAMESON; ESTATE OF ROBERT JAMESON; SARA LYNN DUVALL; LARRY DUVALL; MATTHEW STEPHEN REED; JILL LEIGH PARMETER; LARRY LARGE; CAREY MEISSNER; MARK MCVICKERS; IRMA MCVICKER; MOLLIE HANDY; EDWARD RICCI; ROBERT RODDY JR.; RUTH ANN HOLLER; JOHN HOLLER; JOSEPH AARON HOLLER; MELISSA WARNER; SCOTT NICHOLAS WARNER; ASHTON WARNER; VIOLET SUE LONEY; JIM ANTHONY KAYLOR; VICTORIA STRONG; ESTATE OF NATHAN STRONG; MALISA LINN; ESTATE OF RICHARD JEFFREY LINN; DORIS PANGELINAN KENT; CHRISTOPHER KENT; JARED JOHN SANTOS; APRIL HESS; KATHERINE MEEKS; BRADLEY KRYST; D.C.; M.C.; CONNOR LARSON; SAMANTHA ULRICH; SANDRA LEE HACKENBERG; NANCY ANN MORGADO; LETHA DODGE; RONNIE DODGE; HOLLIE TOWLE; TAMMY BOWDEN; JENNIFER MABUS; MONICA SMITH; DEBORAH TRIMBLE; ANTHONY TRIMBLE; ESTATE OF CHRIS NEIBERGER;

MARY NEIBERGER; RICHARD NEIBERGER; AMI NEIBERGER; ROBERT NEIBERGER; ERIC NEIBERGER; PAMELA THRALL; KATHLEEN STEPHENS; TRENT STEPHENS; SUMMER STEPHENS; RHETT STEPHENS; BRITTANI HOBSON; DEREK STEPHENS; ESTATE OF JOSHUA REEVES; LESLIE HARDCASTLE; JOSHUA JACKSON REEVES; WANDA JEAN REEVES; JAMES REEVES; JARED DILLON REEVES; JONI ARIEL REEVES LITTLE; SHERRI C. HOILMAN; PATRICK HANLEY; KATHERINE HANLEY; EDWARD HANLEY; CECELIA HANLEY; SAMUEL MONTALBANO; DEBORAH WILSON; OBDULIA MONCADA; PRISCILA MONCADA; MIRIAM LOPEZ; ALEXANDRA AGUILAR; DANIELA MONCADA; MATTHEW MONCADA; STEPHEN EVANS; GUY L. DAVIS; TERESITA R. DAVIS; ELIZABETH NICOLE DAVIS; AYLA DAVIS; CHRIS DAVIS; DESTY BOATRIGHT; CHRISTOPHER CRAIG; RICHARD ROBERTSON; HYESUK JERAK; JARED KRIGER; JESSICA KRIGER; JAMES AMOS; DENNIS LEONARD; SHEENA MCCLOUD; AIDAN MCCLOUD; LANDYN MCCLOUD,

Plaintiffs,

v.

JOHN DOE #1 (OWNER OF WALLET TNiq9AXBp9EjUqhDhrwrfvAA8U3GUQZH81); JOHN DOE #2 (OWNER OF WALLET TTiDLWE6fZK8okMJv6ijg42yrH6W2pjSr9), JOHN DOE #3 (OWNER OF WALLET TAhwhFv3JpK39Nc2m8W5LPCcoTisutiRfp); JOHN DOE # 4 (OWNER OF WALLET TJdgB1k6ot3f2nLuZug6D8eD3HavTmzmSK); JOHN DOE #5 (OWNER OF WALLET TXGHxdYbGy574z5hBu4LNzq9NzjZQ9bhUf); JOHN DOE #6 (OWNER OF WALLET TFQbqaNbmq2xsVor2NbufLkYZvxFC9wC7k)

Defendants,

v.

TETHER INTERNATIONAL, S.A. de C.V.,

Garnishee.

Plaintiffs, 1,335 U.S. military servicemembers, or their surviving family members, who were victims of terrorist attacks sponsored by the Islamic Republic of Iran ("Iran") and are judgment creditors of Iran, bring this action on their judgments to enforce those judgments and execute against blocked assets of agencies or instrumentalities of Iran.

**INTRODUCTION**

1.       This action concerns cryptocurrency wallets identified by Plaintiffs, through their investigation, as holding millions of dollars worth of cryptocurrency assets—specifically, USDT stablecoins—that are property of agencies and instrumentalities of Iran. Initially, Plaintiffs' investigation identified a number of cryptocurrency wallets with balances large and small, with ties to Iran and Iranian-based cryptocurrency exchanges.  While that investigation was ongoing, the U.S. government confirmed its interest in two wallets that Plaintiffs' investigation had identified: one, the wallet with Tron address TNiq9AXBp9EjUqhDhrwrfvAA8U3GUQZH81 (the "TNiq Wallet"), was the most valuable wallet that Plaintiffs had identified by far, holding assets worth more than $212 million, and the other—with Tron address TTiDLWE6fZK8okMJv6ijg42yrH6W2pjSr9 (the "TTiD Wallet")—was one that Plaintiffs had linked to the TNiq Wallet through public blockchain data and held assets worth over $131 million.

2.       The U.S. government's interest in, and actions against, those wallets progressed in parallel with Plaintiffs' investigation and, on April 24, 2026, the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") officially added both the TNiq Wallet and the TTiD Wallet to its list of Specially Designated Nationals ("SDN"), identifying the wallets as property of an agency or instrumentality of Iran, namely the Central Bank of Iran ("CBI").[1]  This designation establishes that the assets in these wallets are "blocked assets" of an agency or instrumentality of

---

[1] *See Iran-related Designations; Counter Terrorism and Iran – related Designation Update; Issuance of Iran-related General License*, OFAC (Apr. 24, 2026), https://ofac.treasury.gov/recent-actions/20260424.

Iran that are "subject to execution or attachment in aid of execution in order to satisfy" Plaintiffs' judgments against Iran, as provided by Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA").

3.    Additionally, on July 14, 2026, OFAC took similar action against four additional digital wallet addresses—referred to herein as the TAhw Wallet, the TJdg Wallet, the TXGH Wallet, and the TFQb Wallet—adding those wallet addresses to its designation of CBI on its SDN list, and thereby identifying the wallets as identifiers of an agency or instrumentality of Iran, namely CBI.[2] This designation establishes that the assets in these wallets are "blocked assets" of an agency or instrumentality of Iran that are "subject to execution or attachment in aid of execution in order to satisfy" Plaintiffs' judgments against Iran, as provided by Section 201(a) of TRIA.

4.    Plaintiffs are 1,335 U.S. military servicemembers, or their surviving family members, who were victims of terrorist attacks sponsored by Iran.  Their lives were forever altered by attacks involving gunfire, improvised explosive devices ("IEDs"), suicide bombings, rocket-propelled grenades ("RPGS"), indirect fire attacks ("IDFs") such as mortar attacks, and others. Today, Plaintiffs are judgment creditors of Iran collectively holding judgments awarding them $20 billion in damages, including $10,476,975,424.14[3] in compensatory damages.[4]

5.    Plaintiffs include Frederick Benson, the father of Petty Officer 1st Class Darrik C. Benson, who served in Afghanistan as a member of the U.S. Navy.  On August 6, 2011, SO1

---

[2] *See Iran-related Designations; Iran-related and Counter Terrorism Designation Update; Issuance of Iran-related General License*, OFAC (July 14, 2026), https://ofac.treasury.gov/recent-actions/20260714.

[3] Due to certain calculation errors in the underlying judgments, Plaintiffs mistakenly listed the total awarded compensatory damages in the Initial Complaint and Amended Complaint as $10,461,103,568.10.  Various other minor errors related to the listed awarded compensatory damages are corrected throughout.

[4] These figures include forty-nine (49) claimants whose judgments are in the process of being served pursuant to 28 U.S.C. 1608(a)(4), though no affidavit of service by the U.S. State Department has yet been entered.  *See* Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Oct. 14, 2025), ECF No. 105; Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Mar. 4, 2026), ECF No. 140; Order, *Adamkavicius v. Islamic Republic of Iran*, No. 23-cv-03571-EGS-ABJ (D.D.C. July 30, 2025), ECF No. 41.  Excluding these, the Plaintiffs' claims are worth a total of $9,950,895,064.75 in compensatory damages.

(SEAL) Benson was injured in an attack on a helicopter committed by the Haqqani Network, a part of the Taliban, in Wardak Providence, Afghanistan.  SO1 (SEAL) Benson died on August 6, 2011, as a result of his injuries.  Third. Am. Compl. ¶¶ 278–82, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. Feb. 1, 2023), ECF No. 133.

6.      Iran's material support to terrorist organizations substantially contributed to the attacks that caused each of Plaintiffs' injuries, including those of surviving victims of attacks and family members grieving the deaths of their loved ones.  Each Plaintiff has their own unique harm, but all stem from atrocities Iran supported and caused in Iraq and Afghanistan.

7.      Plaintiffs sought justice across five actions in D.C. District Court—*Martino*, *Cabrera*, *Adamkavicius*, *Neiberger*, and *Zambon*.  Evaluating both Iran's liability for the attacks and the damages each Plaintiff suffered as a result, the District Court for the District of Columbia

awarded final judgments to each Plaintiff in nineteen orders.[5] Plaintiffs have registered those judgments in this District pursuant to 28 U.S.C. § 1963.[6]

8.       Plaintiffs are entitled to execute on (and to attach in aid of execution on) Defendants' assets in the TNiq Wallet, TTiD Wallet, TAhw Wallet, the TJdg Wallet, the TXGH Wallet, and the TFQb Wallet, including through a turnover order directed to Garnishee Tether International, S.A. de C.V. ("Tether"), the issuer of the USDT stablecoins held in those wallets, which maintains the ability to freeze, "burn and remint," and otherwise transfer Defendants' property interests and the value thereof to Plaintiffs.

---

[5] Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Feb. 25, 2025), ECF No. 72; Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. May 7, 2025), ECF No. 92; Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Oct. 14, 2025), ECF No. 105; Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Mar. 4, 2026), ECF No. 140; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Jul. 19, 2022), ECF No. 77; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Dec. 13, 2022), ECF No. 127; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. May 16, 2023), ECF No. 138; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Feb. 29. 2024), ECF No. 250; Order, *Cabrera v. Islamic Republic of Iran*, Case No. 19-cv-03835-JDB (D.D.C. May 31, 2024), ECF No. 264;  Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. June 28, 2024), ECF No. 273; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Sept. 30, 2024), ECF No. 285; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Oct. 1, 2024), ECF No. 286; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. May 12, 2025), ECF No. 302; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. May 16, 2025), ECF No. 304; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. July 15, 2025), ECF No. 314; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. July 15, 2025), ECF No. 315l Order, *Adamkavicius v. Islamic Republic of Iran*, No. 23-cv-03571-EGS-ABJ (D.D.C. July 30, 2025), ECF No. 41; Order, *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 30, 2022), ECF No. 92; R. & R., *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 8, 2022), ECF No. 86; Order, *Zambon v. Islamic Republic of Iran*, No. 18-cv-02065-JDB (D.D.C. Apr. 25, 2025), ECF No. 304.  The majority of the orders constitute final judgments for the included Plaintiffs.  The District Court for the District of Columbia also issued individual final judgments for 111 plaintiffs. Judgments, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. Aug. 3, 2022), ECF Nos. 83-105; Judgments, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. May 2, 2023), ECF Nos. 139-143; Judgments, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. June 5, 2023), ECF Nos. 144-208; Judgments, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. June 6, 2022), ECF Nos. 209-229; Judgment, *Zambon v. Islamic Republic of Iran*, No. 18-cv-02065-JDB (D.D.C. Sept. 11, 2025), ECF No. 321. Each of the foregoing orders and judgments is hereby incorporated by reference into this Complaint.

[6] *See Larson et al. v. Islamic Republic of Iran*, 26-mc-00149 (S.D.N.Y.), ECF No. 1 (*Adamkavicius*); *Robert Martino et al. v. Islamic Republic of Iran*, 26-mc-00152 (S.D.N.Y.), ECF No. 1; *Robert Martino et al. v. Islamic Republic of Iran*, 26-mc-00153 (S.D.N.Y.), ECF No. 1; *Robert Martino et al. v. Islamic Republic of Iran*, 26-mc-00154 (S.D.N.Y.), ECF No. 1; *Neiberger et al. v. Islamic Republic of Iran*, 26-mc-00151 (S.D.N.Y.), ECF No. 1; *Boatright et al. v. Islamic Republic of Iran*, 26-mc-00148 (S.D.N.Y.), ECF No. 1  (*Zambon*); *Cabrera et al v. Islamic Republic of Iran*, 26-mc-00160 (S.D.N.Y.), ECF No. 1.

9.      The case for attachment, execution, and turnover is clear.  TRIA provides that, "[n]otwithstanding any other provision of law," those who hold judgments against "a terrorist party" may execute on the "blocked assets" of that terrorist party or its "agency or instrumentality." TRIA § 201(a), (d)(2).  Iran is a well-established "terrorist party;" having been a designated state sponsor of terrorism since 1984. OFAC has designated the assets held in the Defendants' wallets as the property of an agency or instrumentality of Iran, also rendering those assets blocked.  Thus, the wallets and their assets satisfy the test for execution, and attachment in aid of execution, under TRIA "notwithstanding any other provision of law." *See also* Executive Order 13599; 31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, 830 F.3d 107, 131 (2d Cir. 2016) ("*Kirschenbaum I*") (recognizing that "all assets belonging to an entity that satisfies Executive Order 13,599's definition of 'Government of Iran' are automatically blocked"), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018).

### PARTIES

10.      Plaintiffs are direct victims and surviving family members of victims of Iranian-sponsored terrorism.  They have been injured by Iranian-backed proxy militias, which carried out the kidnapping, murder, or attempted murder of U.S. servicemembers and civilian contractors deployed in Iraq and Afghanistan during the Global War on Terror.  Plaintiffs have obtained judgments against Iran in five separate actions brought in the U.S. District Court for the District of Columbia.  Collectively, those judgments award Plaintiffs more than $20 billion USD in damages for their suffering, including $10,476,975,424.14USD in compensatory damages including prejudgment interest, as detailed in Exhibit 1.[7]

---

[7] All relevant orders and judgments in Plaintiffs' favor are listed in Exhibit 1 to the Complaint, which is attached hereto and incorporated into the Complaint by reference.  In the majority of these orders, the court did not issue individual judgments, but rather ordered that the respective order would be the final judgment for the included plaintiffs.  *See, e.g.*, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. April 3, 2026), ECF No.

11.      **The *Adamkavicius* Plaintiffs**.  Fourteen (14) *Adamkavicius* plaintiffs obtained a judgment against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Iraq during the Global War on Terror.  *See* Order, *Adamkavicius v. Islamic Republic of Iran*, No. 23-cv-03571-EGS-ABJ (D.D.C. July 30, 2025), ECF No. 41.  The judgment is in the process of being served upon Iran pursuant to 28 U.S.C. 1608(a)(4), though no affidavit of service by the U.S. State Department has yet been entered.  On April 25, 2025 the D.D.C. awarded these plaintiffs $56,250,000 in compensatory damages, $33,268,564.36 in prejudgment interest, and $89,518,564.35, for a total of $179,037,128.70 in damages.  *Id*.**The Cabrera Plaintiffs**.  One thousand and eighty-nine (1,089) *Cabrera* plaintiffs have obtained final judgments against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Afghanistan during the Global War on Terror.  *See* Order, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. April 3, 2026); *Cabrera et al v. Islamic Republic of Iran*, 26-mc-00160 (S.D.N.Y.), ECF No. 1. To date, the *Cabrera* plaintiffs have been awarded $4,554,525,000 in compensatory damages, $3,334,962,512.79 in prejudgment interest, and $7,891,987,512.79 in punitive damages, for a total of $15,781,475,025.58 in damages.  Order, Order, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. April 3, 2026); *Cabrera et al v. Islamic Republic of Iran*, 26-mc-00160 (S.D.N.Y.) ECF No. 1.

12.      **The Martino Plaintiffs**.  One hundred and eighty-two (182) *Martino* plaintiffs have obtained final judgments against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Iraq during the Global War on Terror.  *See* Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Feb. 25, 2025),

---

323. Of 1341 Plaintiffs, 111 Plaintiffs also had individual judgments issued.  *See, e.g.*, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. June 5, 2023), ECF No. 192 (individual judgment of Frederick Benson).

ECF No. 72; Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. May 7, 2025), ECF No. 92; *Blodgett et al. v. Islamic Republic of Iran*, 26-mc-00152 (S.D.N.Y.), ECF No. 1 (*Martino*); *Eutin et al. v. Islamic Republic of Iran*, 26-mc-00153 (S.D.N.Y.), ECF No. 1 (*Martino*); *Lambert el al. v. Islamic Republic of Iran*, 26-mc-00154 (S.D.N.Y.), ECF No. 1 (*Martino*). To date, the *Martino* plaintiffs with final judgments have been awarded $711,281,778 in compensatory damages, $965,470,395 in prejudgment interest, and $1,676,752,173 in punitive damages, for a total of $3,353,504,346 in damages. Order, ECF No. 72; Order, ECF No. 92.

13. The *Martino* plaintiffs also include thirty-five (35) individuals who have obtained a judgment which is still in the process of being served upon Iran pursuant to 28 U.S.C. 1608(a)(4), though no affidavit of service by the U.S. State Department has yet been entered. These plaintiffs have been awarded $226,250,000 in compensatory damages, $194,439,939 in prejudgment interest, and $420,689,939 in punitive damages, for a total of $841,379,878 in damages. Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Oct. 14, 2025), ECF No. 105; Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Mar. 4, 2026), ECF No. 140.

14. Together, the *Martino* Plaintiffs have been awarded $937,531,778 in compensatory damages, $1,159,910,334 in prejudgment interest, and $2,097,442,112in punitive damages, for a total of $4,194,884,224 in damages. Order, ECF No. 105; Order, ECF No. 140; *Blodgett et al. v. Islamic Republic of Iran*, 26-mc-00152 (S.D.N.Y.), ECF No. 1 (*Martino*); *Eutin et al. v. Islamic Republic of Iran*, 26-mc-00153 (S.D.N.Y.), ECF No. 1 (*Martino*); *Lambert el al. v. Islamic Republic of Iran*, 26-mc-00154 (S.D.N.Y.), ECF No. 1 (*Martino*).

15. **The Neiberger Plaintiffs**. Thirty-nine (39) *Neiberger* plaintiffs obtained final judgments against Iran for the injuries they sustained as a result of Iranian-backed proxy

7

militias injuring or killing U.S. servicemembers in Iraq during the Global War on Terror. Order, *See Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 30, 2022), ECF No. 92; *Neiberger et al. v. Islamic Republic of Iran*, 26-mc-00151 (S.D.N.Y.), ECF No. 1. On September 30, 2022 the D.D.C. court awarded these plaintiffs $146,452,279 in compensatory damages, $81,156,404 in prejudgment interest, and $227,608,683 in punitive damages, for a total of $455,217,367 in damages. *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 30, 2022), ECF No. 92; *Neiberger et al. v. Islamic Republic of Iran*, 26-mc-00151, ECF No. 1  (S.D.N.Y.).

16.    **The Zambon Plaintiffs**.  Eleven (11) *Zambon* plaintiffs obtained a final judgment against Iran for the injuries they sustained as a result of Iranian-backed proxy militias injuring or killing U.S. servicemembers in Iraq during the Global War on Terror.  *See* Order, *Zambon v. Islamic Republic of Iran*, Case No. 18-cv-02065-JDB (D.D.C. Apr. 25, 2025), ECF No. 304; *Boatright et al. v. Islamic Republic of Iran*, 26-mc-00148 (S.D.N.Y.), ECF No. 1 (*Zambon*).  On April 25, 2025 the D.D.C. awarded these plaintiffs $75,950,133 in compensatory damages, and $94,468,419.00 in prejudgment interest, for a total of $170,418,552 in damages.[8]   *See* Order, *Zambon v. Islamic Republic of Iran*, Case No. 18-cv-02065-JDB (D.D.C. Apr. 25, 2025 ), ECF No. 304; *Boatright et al. v. Islamic Republic of Iran*, 26-mc-00148 (S.D.N.Y.) ECF No. 1 (*Zambon*).

17.    **Defendant John Doe #1** ("Defendant TNiq") is the owner of the assets located in the digital wallet with address TNiq9AXBp9EjUqhDhrwrfvAA8U3GUQZH81 (the "TNiq" Wallet).  Defendant TNiq is an agency or instrumentality of Iran. On April 21, 2026, U.S. federal law enforcement agencies identified the assets stored in the TNiq Wallet as tied to Islamic

---

[8] A motion for punitive damages is currently pending.  Mot. for Punitive Damages Awards, *Zambon v. Islamic Republic of Iran*, No. 18-cv-02065-JDB (D.D.C. Nov. 14, 2025), ECF No. 329.

Revolutionary Guard Corps ("IRGC") funding.  On April 23, 2026, Tether, acting in coordination with OFAC and U.S. government law enforcement, froze over $212 million worth of USDT stablecoins held in the TNiQ Wallet.[9] On April 24, 2026, it was publicly revealed that the TNiQ Wallet was "tied to Iran" and that "blockchain analytics experts" working with the U.S. Government "observed evidence of material links" between the wallet and "the Iranian regime."[10] That same day, OFAC officially added the TNiq9AXBp9EjUqhDhrwrfvAA8U3GUQZH81 wallet to OFAC's Specially Designated Nationals ("SDN") list as property of an agency or instrumentality of Iran, which formally sanctioned and "blocked" the wallet, prohibited any U.S. persons from doing any business with the wallet, and conclusively established that the wallet is subject to execution and attachment to satisfy Plaintiffs' judgments against Iran.[11]

18.    **Defendant John Doe #2** ("Defendant TTiD") is the owner of the assets located in the digital wallet with address TTiDLWE6fZK8okMJv6ijg42yrH6W2pjSr9 (the "TTiD Wallet"). Defendant TTiD is an agency or instrumentality of Iran, and further, Defendant TTiD is the same agency or instrumentality of Iran as Defendant TNiq. Indeed, each of the Defendants' wallet addresses are identifiers for the same agency or instrumentality of Iran. On April 23, 2026, Tether, acting in coordination with OFAC and U.S. Government Law enforcement, froze over $131 million worth of USDT stablecoins held in Defendant TTiD's Wallet.[12]  On April 24, 2026, it was publicly revealed that Defendant TTiD's Wallet was "tied to Iran" and that "blockchain analytics experts" working with the U.S. Government "observed evidence of material links" between the

---

[9] *Tether Supports Freeze of more Than $344 Million in USDT in Coordination with OFAC and U.S. Law* Enforcement, TETHER, (Apr. 23, 2026) https://tether.io/news/tether-supports-freeze-of-more-than-344-million-in-usdt-in-coordination-with-ofac-and-u-s-law-enforcement/

[10] Jennifer Hansler & Sean Lyngaas, *US freezes $344 million in cryptocurrency said to be linked to Iran*, CNN (Apr. 24, 2026), https://www.cnn.com/2026/04/24/politics/us-freezes-cryptocurrency-iran.

[11] *See Iran-related Designations; Counter Terrorism and Iran – related Designation Update; Issuance of Iran-related General License*, OFAC (Apr. 24, 2026), https://ofac.treasury.gov/recent-actions/20260424.

[12] TETHER, *supra* note 7.

wallet and "the Iranian regime."[13] The same day, OFAC officially added the TTiDLWE6fZK8okMJv6ijg42yrH6W2pjSr9 wallet to OFAC's SDN list as property of the same agency or instrumentality of Iran as Defendant TNiq, which formally sanctioned and "blocked" the wallet, prohibited any U.S. persons from doing any business with the wallet, and conclusively established that the wallet is subject to execution and attachment to satisfy Plaintiffs' judgments against Iran.[14]

19.      **Defendant John Doe #3** ("Defendant TAhw") is the owner of the assets located in the digital wallet with address TAhwhFv3JpK39Nc2m8W5LPCcoTisutiRfp (the "TAhw Wallet"). Defendant TAhw is an agency or instrumentality of Iran.  On July 14, 2026, OFAC officially added the TAhwhFv3JpK39Nc2m8W5LPCcoTisutiRfp wallet to OFAC's SDN list as property of the same agency or instrumentality of Iran as Defendants TNiq and TTiD, which formally sanctioned and "blocked" the wallet, prohibited any U.S. persons from doing any business with the wallet, and conclusively established that the wallet is subject to execution and attachment to satisfy Plaintiffs' judgments against Iran.

20.      **Defendant John Doe #4** ("Defendant TJdg") is the owner of the assets located in the digital wallet with address TJdgB1k6ot3f2nLuZug6D8eD3HavTmzmSK (the "TJdg Wallet"). Defendant TJdg is an agency or instrumentality of Iran.  On July 14, 2026, OFAC officially added the TJdgB1k6ot3f2nLuZug6D8eD3HavTmzmSK wallet to OFAC's SDN list as property of the same agency or instrumentality of Iran as Defendants TNiq, TTiD, and TAhw, which formally sanctioned and "blocked" the wallet, prohibited any U.S. persons from doing any business with

---

[13] Jennifer Hansler & Sean Lyngaas, *US freezes $344 million in cryptocurrency said to be linked to Iran*, CNN (Apr. 24, 2026), https://www.cnn.com/2026/04/24/politics/us-freezes-cryptocurrency-iran.

[14] *See Iran-related Designations; Counter Terrorism and Iran – related Designation Update; Issuance of Iran-related General License*, OFAC (Apr. 24, 2026), https://ofac.treasury.gov/recent-actions/20260424.

the wallet, and conclusively established that the wallet is subject to execution and attachment to satisfy Plaintiffs' judgments against Iran.

21.    **Defendant John Doe #5** ("Defendant TXGH") is the owner of the assets located in the digital wallet with address TXGHxdYbGy574z5hBu4LNzq9NzjZQ9bhUf (the "TXGH Wallet").  Defendant TXGH is an agency or instrumentality of Iran.  On July 14, 2026, OFAC officially added the TXGHxdYbGy574z5hBu4LNzq9NzjZQ9bhUf wallet to OFAC's SDN list as property of the same agency or instrumentality of Iran as Defendants TNiq, TTiD, TAhw, and TJdg, which formally sanctioned and "blocked" the wallet, prohibited any U.S. persons from doing any business with the wallet, and conclusively established that the wallet is subject to execution and attachment to satisfy Plaintiffs' judgments against Iran.

**Defendant John Doe #6** ("Defendant TFQb", and along with Defendant TNiq, Defendant TTiD, Defendant TAhw, Defendant TJdg, and Defendant TXGH, "Defendants') is the owner of the assets located in the digital wallet with address TFQbqaNbmq2xsVor2NbufLkYZvxFC9wC7k (the "TFQb Wallet").  Defendant TFQb is an agency or instrumentality of Iran and further Defendant TFQb is the same agency or instrumentality of Iran as Defendant TNiq, Defendant TTiD, Defendant TAhw, Defendant TJdg, and Defendant TXGH.  On July 14, 2026, OFAC officially added the TFQbqaNbmq2xsVor2NbufLkYZvxFC9wC7k wallet to OFAC's SDN list as property of the same agency or instrumentality of Iran as Defendants TNiq, TTiD, TAhw, TJdg, and TXGH, which formally sanctioned and "blocked" the wallet, prohibited any U.S. persons from doing any business with the wallet, and conclusively established that the wallet is subject to execution and attachment to satisfy Plaintiffs' judgments against Iran.

11

22.     Garnishee Tether is an El Salvador Sociedad Anonima de Capital Variable.[15] Tether is registered as a Money Services Business with the Financial Crimes Enforcement Network of the U.S. Department of the Treasury.  Tether is the issuer of USDT stablecoins that are fully backed by an equivalent amount of U.S. dollar-denominated assets held by Tether with U.S. regulated financial institutions.[16]   Tether holds its U.S. treasuries in New York at Cantor Fitzgerald, a New York based financial services firm.[17]  Each USDT represents a "contractual right personal to [the user]" to redeem their USDT for an equivalent U.S. dollar amount.[18]

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction over this action pursuant to its ancillary jurisdiction to enforce the judgments of a federal court, pursuant to 28 U.S.C. § 1331, and pursuant to TRIA § 201(a).  *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) ("[W]e find it clear beyond cavil that Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment.").

---

[15]     *See   Relevant   Information   Document*,   TETHER   (Feb.   20,   2026), https://tether.to/public/Relevant_Information_Document_-_Tether_International,_S.A._de_C.V..pdf.

[16] *See What are Tether Tokens and How Do They Work?*, TETHER, https://tether.to/ru/how-it-works/ (last visited Mar. 18, 2026) ("All Tether tokens are pegged at 1-to-1 with a matching fiat currency (e.g., 1 USD₮ = 1 USD) and are backed 100% by Tether's reserves.").

[17]*Cantor Fitzgerald Confirms It Is Custodian for Tether Treasuries*, LEDGER INSIGHTS (Dec. 13, 2023), https://www.ledgerinsights.com/cantor-fitzgerald-custodian-tether-stablecoin/; *see also* Anna Irrera et al., *Tether Expects First-Quarter Profit of $700 Million, CTO Says*, BLOOMBERG (Mar. 24, 2023), https://www.bloomberg.com/news/articles/2023-03-24/tether-usdt-expects-first-quarter-profit-of-700-million-ardoino-says ("Cantor Fitzgerald is a custodian for Tether's T-bill holdings[]…."); Jeff John Roberts, *Crypto Giant Tether Has $187 Billion in Assets*, FORTUNE (Jan. 27, 2026), https://fortune.com/article/tether-ceo-paolo-ardoino-crypto-firm-stabelcoins-howard-lutnick-usdt-cantor-fitzgerald/ ("Tether stores its bulging hoard of Treasuries [at Cantor Fitzgerald]….[and t]he money is there[]…." (internal quotation marks omitted)).

[18] *See Terms of Service*, TETHER at § 4.1, https://tether.to/en/legal/ (last visited Apr. 26, 2026) (explaining redemption process and that it is "a contractual right personal to [the user]").  A copy of the Tether Terms of Service and related agreements (last updated February 26, 2026) is attached hereto as Exhibit 2, and hereby incorporated by reference.

24.     This court has personal jurisdiction over Defendants and Tether pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), which permits this Court to exercise personal jurisdiction to the extent allowed by New York statutes.  CPLR § 301 provides that courts "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore"—including, as relevant here, quasi-in rem jurisdiction.  *See Banco Ambrosiano, S.P.A. v. Artoc Bank & Tr. Ltd.*, 464 N.E.2d 432, 435 (N.Y. 1984).  Quasi-in rem jurisdiction over the Defendants and Tether is appropriate because Defendants hold a property right in the forum—the right to redeem their stablecoin and/or a debt claim on Tether that "is closely related to [the] plaintiff's claim," *id.* at 435.  Alternatively, this Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

25.     Jurisdiction over Garnishee Tether is also proper under CPLR § 302 because this action arises from and relates to Tether's transaction of business in New York, namely the relationship Tether maintains with the New York-based custodian that holds the dollar-denominated assets that back the stablecoins at issue in this action.  *See Peterson v. Bank Markazi*, 121 F.4th 983, 100405 (2d Cir. 2024) (holding that jurisdiction is proper in actions to compel turnover of property where, as here, there is a right to payment of money in New York).  Because this action arises out of and relates to Tether's transaction of business in New York, including reserves which are in the custody of and managed by New York financial institutions, Hannah Lang, *Tether Is in Talks With "Big Four" Firm About Reserve Audit, CEO Says*, REUTERS (Mar. 21, 2025), https://www.reuters.com/technology/tether-is-talks-with-big-four-firm-about-reserve-audit-ceo-says-2025-03-21/; Tether has "purposefully avail[ed] [itself] of the privilege of conducting activities within" New York, *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), and this

13

Court has personal jurisdiction over Tether to order turnover. For similar reasons, jurisdiction over Defendants is proper under CPLR § 302.

26.    Venue is proper in this District pursuant to 28 U.S.C. 1391. Under Section 1391(b)(2), "a substantial part of property that is the subject of the action" is situated in the Southern District of New York because the Tether maintains custody of the assets underlying the stablecoin in the Southern District of New York. In the alternative, venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events … giving rise to the claim" occurred in this district or 28 U.S.C. 1391(b)(3) because there is no other district where venue is proper and there is personal jurisdiction over Defendants and/or Tether.

## FACTUAL ALLEGATIONS

### A.    Plaintiffs Are Entitled to Judgments Totaling Nearly $20 billion Against Iran.

27.    Iran's terrorist attacks and its sponsoring of terrorist attacks had devastating consequences for Plaintiffs, who, across several decades, fell victim to the series of Iranian-sponsored attacks described below.

**Complex Ambush Attacks**

28.    A complex ambush attack, often carried out by IRGC forces or proxy forces, is a coordinated, multi-layered attack designed to maximize casualties and create chaos. These attacks often begin with an explosive-initiated method, like use of an Improvised Explosive Device, roadside bomb, or vehicle born explosive device, to stop a convey or patrol. Multiple insurgent teams then simultaneously initiate attacks on the convey or patrol using small arms, rocket-propelled grenades, and sometimes mortars (a portable, muzzle-loaded weapon that projects explosive devices over indirect trajectories, allowing it to clear buildings or hills, and drop vertically into targets). The aim is to inflict maximum damage quickly followed by rapid retreat.

14

29.    During the Global War on Terror, Iran would use complex ambush attacks, whereby rocket propelled grenades and large groups of insurgents would attack American soldiers. These type of attacks were repeatedly employed and killed hundreds of Americans, including Plaintiffs.

30.    For example, in what became known as the "Good Friday Ambush", on April 9, 2004, in Baghdad, Iraq, Sergeant Elmer C. Krause and civilian contractors Stephen F. Hulett, Timothy E. Bell, Tony Duane Johnson, and Jack A. Montague were in a convoy when insurgents attacked by small arms fire, approximately fifteen RPGs, and additional small arms from what seemed like "hundreds of insurgents … firing rifles and rocket-propelled grenades and triggering IEDs." Mem. Op. & Order at 51, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Sept. 30, 2024), ECF No. 55 (quoting ECF No. 38-133). Hulett, Johnson, and Montague were killed in the attack, but Krause and Bell were deemed missing and later declared dead. The D.C. District Court concluded Iran was liable for supporting this attack due to its material support of the Zarqawi organization, and awarded damages to the loved ones of Sgt. Krause and Hulett, Bell, Johnson and Montague, including their children. *Id.*; *see also* Order, ECF No. 92.

31.    Another complex ambush attack occurred on October 10, 2005 in Al Anbar Province, Iraq. U.S. Army Sergeant Jared Kriger was severely injured by the Zarqawi Organization in this attack. SGT Kriger and his unit were traveling in a convoy when an IED detonated on the last vehicle in the convoy. Some of the unit was able to leave the scene but, due to its extensive damage, SGT Kriger's vehicle had to wait for an Army Quick Reaction Force ("QRF"). As the vehicle waited, it received fire from small arms and rocket-propelled grenades ("RPGs"). Then, when the QRF arrived, a second IED detonated. The QRF team was doused in diesel, and two servicemembers "burn[ed] to death on the street." Mem. Op. at 29, *Zambon v. Islamic Republic*

15

*of Iran*, Case No. 18-cv-02065-JDB (D.D.C. Apr. 25, 2025), ECF No. 303. Approximately two hours later, the rest of SGT Kriger's unit returned to the scene to extract those who remained, only to be attacked with RPG and small arms fire. *Id*. SGT Kriger suffered severe injuries including gunshot wounds to his lower right leg, shrapnel in his upper thigh, and severe back issues. First Am. Compl. at 13-14, *Zambon v. Islamic Republic of Iran*, Case No. 18-cv-02065-JDB (D.D.C. Feb. 3, 2023). On April 25, 2025, the D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries that SGT Kriger's and his wife, Jessica Kriger endured as a result. Mem. Op. at 33–34.

32.    Many other Plaintiffs were injured or had their loved ones killed because of complex attacks supported by Iran. *See*, *e.g.*, Order, *Cabrera v. Islamic Republic of Iran*, Case No. 19-cv-03835-JDB (D.D.C. Sept. 30, 2024), ECF No. 285 (judgment against Iran including on behalf of CPL John Zelko IIII and his loved ones, after an April 18, 2007 complex attack with AK-47s and RPGs left CPL Zelko with partial paralysis in his right arm, a severe traumatic brain injury, hearing loss and vision impairment); Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. May 16, 2023), ECF No. 138; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Feb. 3, 2023), ECF No. 133 at 154, 176, 389; Third. Am. Compl. at 27-28, ECF. No. 133 (On July 13, 2008, Jason M. Bogar, 1LT Jonathan P. Brostrom, SGT Israel Garcia, SPC Jason D. Hovater, CPL Pruitt A. Rainey, and CPL Gunnar Zwilling were killed, and SSG Jonathan Benton was injured in a complex attack involving small arms fire and RPGs launched by the Taliban and likely al-Qaeda with Iranian backing).

**Improvised Explosive Device ("IED") Attacks**

33.    During the Global War on Terror, Iran used IED attacks. These devices are constructed with additional shrapnel and use artillery shells or conventional high-explosive

16

charges, in addition to toxic chemicals and other radioactive agents, to inflict mass harm. Hundreds of Americans, including Plaintiffs, were killed or seriously injured as a result of Iran's use of IEDs.

34.     For example, on July 21, 2004, in Saladin Province, Iraq, Ansar al-Islam, an al-Qaeda affiliate in Iraq, killed Private First Class Nicholas Blodgett in an IED attack. First Amended Comp. at 89-90, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (Nov. 5, 2021), ECF No. 15. On September 30, 2024, the D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries PFC Blodgett's loved ones endured, including his mother, Rita Blodgett. Mem. Op. & Order at 19–20, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Sept. 30, 2024), ECF No. 55.

35.     Another IED attack occurred on May 4, 2013, in Kandahar Province, when the Taliban killed U.S. Army Specialist Kevin Cardoza. SPC Cardoza was part of a patrol sent to clear an accident on Highway 1 in Maiwand District, Kandahar province. On the patrol's return trip, its "vehicle was struck by a command wire IED with 500 pounds of explosive material." Mem. Op. at 22, *Adamkavicius v. Islamic Republic of Iran*, No. 23-cv-03571-EGS-ABJ (D.D.C. July 30, 2025), ECF No. 42. The explosion killed all six occupants of the vehicle, including SPC Cardoza. On July 30, 2025, the D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries SGT Cardoza's loved ones endured, including his biological minor daughters, D.C. and M.C. *Id.* at 68–69.

**Suicide Attacks**

36.     A suicide attack is a deliberate attack in which the perpetrators intentionally end their lives, often through self-detonating a bomb, to harm or maim multiple, nearby people.

17

Suicide attacks have long been used by Iranian terrorist groups to wound or seriously maim Americans.

37.     For example, on September 13, 2004, the Zarqawi Organization killed Cpl. Adrian Soltau when a bomber crashed into Cpl. Soltau's vehicle and the explosion instantly killed him and numerous other servicemembers. *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Feb. 26, 2025), ECF No. 74 at 96.  On May 7, 2025, the D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries to Cpl. Soltau's loved ones, including his mother, Marjorie Paul, father Andrew Soltau, stepmother Desiree Soltau, stepbrothers James Perry III and Scott Perry, and stepsister Lakiesha Perry-Smith.  Mem. Op. at 4 *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. May 7, 2025), ECF No. 91 at 1, 4, 9 (adopting in part ECF No. 74).

38.     Another suicide attack occurred on October 1, 2012, in Khost Province, Afghanistan, SGT Jeremy Hardison  was killed when he was attacked by the Haqqani Network and al-Qaeda, acting together in a joint al-Qaeda-Taliban cell, in a suicide attack.  Third. Am. Compl. at 332-33, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Feb. 3, 2023), ECF No. 133. On May 31, 2024, the D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries to SSG Hardison's loved ones, including his father Jerry Hardison and sister Justina Hardison.  *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. May 31, 2023), ECF No. 264.

**Small Arms, Rocket-Propelled Grenade ("RPG"), and Anti-Aircraft Attacks**

39.     Anti-aircraft attacks use surface-to-air missiles to destroy enemy aircrafts, drones, or incoming missiles.  These systems are often within civilian areas and deployed around key sites.

40.     On April 28, 2008, in Baghdad, Iraq, JAM conducted an attack during the months-long Battle of Sadr City that resulted in severe injuries to CPL Samuel Montalbano.  During the attack, JAM terrorist operatives targeted CPL Montalbano's unit with direct rocket fire.  Sec. Am. Compl. at 21-22, *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Oct. 23, 2019), ECF No. 21. This forced CPL Montalbano to jump from the rooftop of a building in order to avoid being killed and resulted in CPL Montalbano suffering from a debilitating back injury.  R. & R. at 8-9, 18-19, *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 30, 2022), ECF No. 86;  Order, ECF No. 92.  The D.C. District Court concluded that Iran was liable because it materially supported the attack carried out by JAM and caused CPL Montalbano's pain and suffering and each of the injuries CPL Montalbano's loved ones suffered as a result, including CPL Montalbano's mother Deborah Wilson.  R. & R. at 26, 33-34, 41, *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 30, 2022), ECF No. 86;  Order, ECF No. 92.

**Indirect Fire ("IDF") Attacks**

41.     Indirect fire involves shooting a projectile without a line-of-sight target.  The aim instead is to use curved trajectories to calibrate a target.  However, because the target is not visible, they often result in more scattered shot grouping, which translates to a much higher risk of collateral damages.

42.     Iran would commonly support proxy terrorist groups' use of mortar and rockets in such IDF attacks, including those who killed loved ones of Plaintiffs.  For example, on April 24, 2004, in Baghdad Province, Ansar al-Islam insurgents killed CPT Arthur Felder and SSG Billy Orton by firing enemy artillery, which were either mortars or 107mm rockets, which were launched from a truck.  Mem. Op. & Order at 83, *Martino v. Islamic Republic of Iran*, No. 21-cv-

19

01808-RDM (D.D.C. Sept. 30, 2024), ECF No. 55.  On September 30, 2024, the D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries to CPT Felder and SSG Orton's loved ones, including CPT Felder's mother, Cheryl Felder Stuart, and brother, Rao Felder; and SSG Orton's spouse, Margarita Orton, son, David Scott Orton, adopted son, Manaser Orton. *Id.* at 10.

43.    In another such attack, on June 18, 2013, in Parwan Province, Afghanistan, SPC Robert W. Ellis was killed by the Taliban in an indirect fire rocket attack on Bagram Airfield. Again, the D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries to SPC Ellis's loved ones, including his mother, Joelle Rene Ellis, father John Fitzgerald Ellis, and brother James Earl Ellis.  Third. Am. Compl. at 332-33, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Feb. 3, 2023), ECF 133; Order at 2-3, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB, (D.D.C. May 16, 2023), ECF No. 138.

**Insider Attacks**

44.    Insider attacks involve Iranian agents, often through the Haqqani Network, infiltrating the ranks of Afghan or American forces.

45.    For example, on September 26, 2013, in Paktia Province, Afghanistan, Staff Sergeant Thomas Baysore, Jr. was killed in an insider attack carried out by the Haqqani Network. An Afghan National Army soldier named Ataul Rahman fired at least four rounds at SSG Baysore, striking him twice in the back and the neck.  SSG Baysore subsequently died from his wounds. The D.C. District Court noted the expert opinion on how such an attack is undertaken with the intent to kill Americans—this type of attack requires the Haqqani Network "to identify a potential Afghan soldier target, then recruit and radicalize this Afghan soldier, in addition to training or advising the Afghan soldier about what type of Coalition targets to attack."  Mem. Op. at 26,

*Adamkavicius v. Islamic Republic of Iran*, No. 23-cv-03571-EGS-ABJ (D.D.C. July 30, 2025), ECF No. 42 (internal quotation marks omitted).  The D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries SSG Baysore's loved ones endured including his mother, Sandra Lee Hackenberg and sister, Jennifer Mabus.  *Id.* at 68–69.

**Kidnappings**

46.    Iran also provided material support for terrorist groups to abduct and terrorize hostages.

47.    For example, on August 7, 2016, Professor Kevin King was kidnapped at gunpoint by the Haqqani Network outside the front gates of American University of Afghanistan in Kabul Province, Afghanistan.  Mr. King was held hostage under deplorable conditions, beaten frequently, and denied adequate medical care for over three years before being released in a prisoner exchange on November 19, 2019.  The attack severely wounded Mr. King, who has suffered from severe caloric malnutrition, muscle atrophy, peripheral neuropathy, hypocalcemia, vitamin D deficiency, low bone mineral density, hyperparathyroidism, frostbite on feet and ankles, a weak bladder, and other physical injuries due to repeated beatings.  Third. Am. Compl. at 343-44, *Cabrera v. Islamic Republic of Iran*,  No. 19-cv-03835-JDB (D.D.C. Feb. 3, 2023).  On July 19, 2022, the D.C. District Court concluded that Iran was liable because it supported this attack and caused each of the injuries to Mr. King and his loved ones including his sister Stephanie King.  Mem. Op. at 85-86, ECF No. 78; Order, ECF No. 77.

**Explosively Formed Penetrator ("EFP") Attacks**

48.    An explosively formed penetrator, also known as an explosively formed projectile, is an explosive designed to penetrate armor from longer standoff distances.  They are a type of IED.

21

49.    From 2004 to 2011, IRGC and Hezbollah provided its Special Groups with weapons to target Americans.  These weapons included EFPs, which were professionally manufactured and specially designed to target and penetrate U.S. armor, including Plaintiffs.

50.    For example, on October 4, 2006, in Baghdad, Iraq, Jaysh al-Mahdi ("JAM") terrorists committed a complex attack that killed civilian contractor Rod Richardson.  The attack included the use of an Iranian-manufactured EFP planted and detonated by JAM operatives, who were funded and trained by Iran.  Second Amended Compl. at 15, *Neiberger v. Islamic Republic of Iran*, No. 1:16-cv-02193-EGS-ZMF (D.D.C. Oct. 23, 2019).  On September 30, 2022, the D.C. District Court concluded that Iran was liable because it materially supported the attack carried out by JAM and caused each of the injuries Mr. Richardson and his loved ones suffered as a result, including Mr. Richardson's sister, Pamela Thrall.  R. & R. at 17, 34, *Neiberger v. Islamic Republic of Iran*, No. 1:16-cv-02193-EGS-ZMF (D.D.C. Sept. 8, 2022), ECF No. 86. Order, *Neiberger v. Islamic Republic of Iran*, No. 1:16-cv-02193-EGS-ZF (D.D.C. Oct. 23, 2019), ECF No. 92.

51.    In another EFP attack, on August 6, 2007, in Baghdad, Iraq, JAM terror operatives conducted an attack in the Al Rashid District of western Baghdad that involved planting and detonating an Iranian-manufactured EFP that resulted in the death of SPC Christopher Neiberger.  Sec. Am. Compl. at 18, *Neiberger v. Islamic Republic of Iran*, No. 1:16-cv-02193-EGS-ZMF (D.D.C. Oct. 23, 2019).  The JAM operatives involved in the attack were funded and trained by Iran. On September 30, 2022, the D.C. District Court concluded that Iran was liable because it materially supported the attack carried out by JAM and caused each of the injuries SPC Neiberger's loved ones suffered as a result, including SPC Neiberger's mother Mary Neiberger and father Richard Neiberger, his sister Ami Neiberger, and brothers Robert Neiberger and Eric Neiberger.  R. & R. at 34, 41, *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF

22

(D.D.C. Sept. 30, 2022), ECF No. 86;  Order, ECF No. 92.  The D.C. District Court also concluded that Iran was liable to the estate of SPC Neiberger for materially supporting the attack carried out by JAM because it caused economic damages to the estate.  R. & R. at 28-29, *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 30, 2022), ECF No. 86;  Order, ECF No. 92.

**B.      Total Judgments Against Iran**

52.      Plaintiffs are all judgment-holders—or their estates, heirs, or other beneficiaries or successors-in-interest—from the above-described suits, which all involved injuries from acts of terrorism supported by Iran.

53.      In total, Plaintiffs in this action have been awarded $20 billion against Iran.  Of that sum, $10,476,975,424.14is in compensatory damages, as detailed in Exhibit 1.  These judgments were entered to provide justice and compensation to the direct victims and victims' family members who suffered in numerous terrorist attacks enabled by Iran's state-sponsored terrorism. Iran has refused to voluntarily pay a single cent, and not one of the judgments has been fully satisfied.  They continue to accrue post-judgment interest pursuant to 28 U.S.C. § 1961.

54.      In all of the above cases, the district courts entered orders with sufficient time elapsing such that Iran's failure to satisfy their judgments satisfies 28 U.S.C. § 1610(c) requirement that a reasonable period of time elapse following the entry of judgment before enforcement commences.[19]

---

[19] Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Feb. 25, 2025), ECF No. 72; Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. May 7, 2025), ECF No. 92; Order,  *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Oct. 14, 2025), ECF No. 105; Order, *Martino v. Islamic Republic of Iran*, No. 21-cv-01808-RDM (D.D.C. Mar. 4, 2026), ECF No. 140;; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Jul. 19, 2022), ECF No. 77; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Dec. 13, 2022), ECF No. 127; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. May 16, 2023), ECF No. 138; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Feb. 29. 2024), ECF No. 250; Order, *Cabrera v. Islamic Republic of Iran*, Case No. 19-cv-03835-JDB (D.D.C. May 31, 2024), ECF No. 264;  Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. June 28,

55.     Plaintiffs subsequently registered their final judgments in this District pursuant to 28 U.S.C. § 1963.[20]

## C.     Plaintiffs Are Entitled to Execute on the Blocked Assets of Defendants.

56.     Defendants are agencies or instrumentalities of Iran, a "terrorist party," TRIA § 201(a), and so their assets, which are by definition blocked, *see* 31 C.F.R. §§ 510.211, 594.201(a)(5); *Kirschenbaum I*, 830 F.3d at 137 (recognizing that "all assets belonging to an entity that satisfies Executive Order 13,599's definition of 'Government of Iran' are automatically blocked"), are subject to execution under TRIA.

### i.  Stablecoin and Currency Pegging

57.     A blockchain is a system for a distributed network of machines to keep a shared ledger of transactions publicly and securely.  To maintain a blockchain, a distributed network of machines uses a cryptographic function called a "hash" to validate a series of transactions (a "block"), and connect the block to all the prior transactions (to create a "chain") in a way that is verifiable.

---

2024), ECF No. 273; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Sept. 30, 2024), ECF No. 285; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. Oct. 1, 2024), ECF No. 286; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. May 12, 2025), ECF No. 302; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. May 16, 2025), ECF No. 304; Order, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835-JDB (D.D.C. July 15, 2025), ECF No. 314; Order, *Adamkavicius v. Islamic Republic of Iran*, No. 23-cv-03571-EGS-ABJ (D.D.C. July 30, 2025), ECF No. 41; Order, *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 30, 2022), ECF No. 92; R. & R., *Neiberger v. Islamic Republic of Iran*, No. 16-cv-02193-EGS-ZMF (D.D.C. Sept. 8, 2022), ECF No. 86; Order, *Zambon v. Islamic Republic of Iran*, No. 18-cv-02065-JDB (D.D.C. Apr. 25, 2025), ECF No. 40; Judgments, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. Aug. 3, 2022), ECF Nos. 83-105; Judgments, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. May 2, 2023), ECF Nos. 139-143; Judgments, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. June 5, 2023), ECF Nos. 144-208; Judgments, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. June 6, 2022), ECF Nos. 209-229; Consolidated Judgments *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835-JDB (D.D.C. Apr. 3, 2026); Judgment, *Zambon v. Islamic Republic of Iran*, No. 18-cv-02065-JDB (D.D.C. Sept. 11, 2025), ECF No. 321.

[20] *See Larson et al. v. Islamic Republic of Iran*, 26-mc-00149 (S.D.N.Y.), ECF No. 1 (*Adamkavicius*); *Robert Martino et al. v. Islamic Republic of Iran*, 26-mc-00152 (S.D.N.Y.), ECF No. 1; *Robert Martino et al.  v. Islamic Republic of Iran*, 26-mc-00153 (S.D.N.Y.), ECF No. 1; *Robert Martino et al.  v. Islamic Republic of Iran*, 26-mc-00154 (S.D.N.Y.), ECF No. 1; *Neiberger et al. v. Islamic Republic of Iran*, 26-mc-00151 (S.D.N.Y.), ECF No. 1; *Boatright et al. v. Islamic Republic of Iran*, 26-mc-00148 (S.D.N.Y.), ECF No. 1  (*Zambon*); *Cabrera et al v. Islamic Republic of Iran*, 26-mc-00160 (S.D.N.Y.), ECF No. 1.

24

58.     Cryptocurrency is a digital or virtual currency, like Bitcoin, that operates on the blockchain.  It serves as a medium of exchange and a store of value.

59.     Users transact in cryptocurrency on blockchain networks such as Ethereum, TRON, Binance Smart Chain, Polygon, Avalanche, and Optimism using wallet addresses.  A wallet address is a unique digital identifier that represents where cryptocurrency can be sent to or received from on a blockchain.  These addresses function similarly to account numbers, allowing users to transfer assets such as Bitcoin (BTC), Tether (USDT), or USD Coin (USDC) between parties on the network.

60.     The value of cryptocurrency depends on the asset, how it functions, and market dynamics.  Bitcoin, for example, is generally more volatile because its price fluctuates based on market supply and demand and it is not pegged to any fiat currency.  By contrast, stablecoins such as Tether (USDT) are pegged to a matching currency on a 1-to-1 basis—for example, one U.S.-backed Tether token ("USDT") equals one U.S. dollar.[21]

61.     Thus, to acquire a USDT Tether token (Image 1), a user completes a U.S. dollar wire deposit, and receives the corresponding amount of USD Tether tokens.[22]

---

[21] *See Relevant Information Document*, TETHER, *supra* note 13, ("All Tether tokens are pegged at 1-to-1 with a matching fiat currency (e.g., 1 USD₮ = 1 USD) and are backed 100% by Tether's reserves.").
[22] *See How to Acquire Tether Tokens*, TETHER, https://tether.to/en/how-to-acquire-tether-tokens/ (last visited Apr. 25, 2026).

**Image 1**



62.     USDTs are backed 100% by U.S. dollar treasuries.  That means, at any point, a user can exchange their USDTs for equivalent U.S. dollars (e.g., 10,000 USDTs for $10,000).[23]

63.     This right to redeem is expressly stated in Tether's terms of service.[24]  Specifically, Tether's terms of service state:

> For example, if you purchase 100 USD₮, Reserves valued at $100.00 back those Tether Tokens.  The Reserves are comprised of cash, cash equivalents and other assets …. Tether Tokens are backed by Tether's Reserves[] …. ***Issuances and redemptions of Tether Tokens are administered by Tether***…. Subject to compliance with these Terms, the redemption price payable by Tether for one Tether Token will be one unit of the Fiat currency to which it is pegged (for the USD₮ Tether Token, 1 USD for 1 USD₮;…) …. The Fiat currency payable on redemption will be paid to the bank account in your name designated by you ***via the process specified by Tether***…. The right to purchase Tether Tokens or have Tether Tokens redeemed ***is a contractual right personal to you***.[25]

---

[23] *See Sell your Tether USDT Fast and Easy.*, BITPAY, https://www.bitpay.com/sell-tether (last visited Apr. 25, 2026);.
[24] *See* TETHER, *supra* note 16.
[25] TETHER, *supra* note 16 (emphasis added).

64.    To make this redemption possible, Tether keeps treasury on hand that exceeds the Tethers in circulation.[26] Tether holds its U.S. treasuries in New York at Cantor Fitzgerald, a New York-based financial services firm.[27]

65.    USDT is an issuer-controlled stablecoin, meaning that Tether retains administrative control over the lifecycle of its tokens.  Tether can mint (create) new tokens when there is corresponding demand and can burn (destroy) tokens when they are redeemed or otherwise removed from circulation, thereby managing total supply.

66.    Once USDTs are exchanged for U.S. dollars, they are either burned, taken out of circulation, or ready for future issuance.[28]  Tether "may also seize and destroy Tether Tokens remotely, in response to demands from government, law enforcement or other authorities."[29]

67.    Tether requires users to comply with their terms of service and warn users that failure to comply will result in forfeiting any USD funds otherwise eligible for redemption and potentially freezing of coins in external wallets.[30]  Thus, both directly control when and how their respective stablecoins are issued, redeemed, and frozen, and have the legal and practical ability place to freeze, seize, and transfer stablecoin assets in precisely the circumstances presented here.

### ii.  Iran Uses Cryptocurrency to Evade U.S. Sanctions.

---

[26] *See Transparency*, TETHER, https://tether.to/ru/transparency/?tab=usdt (last visited Apr. 25, 2026); *see What are Tether Tokens and How Do They Work?*, TETHER, https://tether.to/ru/how-it-works/ (last visited Apr. 26, 2026) ("All Tether tokens are pegged at 1-to-1 with a matching fiat currency (e.g., 1 USD₮ = 1 USD) and are backed 100% by Tether's reserves.").

[27] *See* LEDGER INSIGHTS, *supra* note 15; *see also* Irrera et al., *supra* note 15 ("Cantor Fitzgerald is a custodian for Tether's T-bill holdings[] …."); Roberts, *supra* note 15 ("Tether stores its bulging hoard of Treasuries [at Cantor Fitzgerald]….[and t]he money is there[.]…." (internal quotation marks omitted)).

[28] *See FAQs*, TETHER, https://tether.to/en/faqs/ (last visited Apr. 25, 2026).

[29] *See* TETHER, *supra* note 16, § 8.17; *United States v. 4,340,000 Tether ("USDT") Cryptocurrency*, No. 25-cv-386, Dkt. No. 1 at 3 (N.D. Ohio Apr. 25, 2025) ("[P]ursuant to a federal seizure warrant … Tether Limited 'burned' the USDT tokens … [and] reissued the equivalent amount of USDT tokens … to a U.S. law enforcement-controlled virtual currency wallet."); *United States v. Approx. 1,694,395 Tether Cryptocurrency*, No. 24-cv-2828 (D.D.C. 2025) (same).

[30] TETHER, *supra* note 16, § 2.

68.     Since the Iranian Revolution in 1979, Iran has been subject to comprehensive U.S. sanctions.  These sanctions block Iranian government assets in the United States, ban nearly all U.S. trade with Iran, and prohibit foreign assistance and arms sales.  U.S. sanctions in particular have targeted Iran's energy sector, including foreign corporations that invest in it and entities that buy, sell, or transport Iranian oil and natural gas; Iran's financial sector, including its Central Bank; other sectors of Iran's economy, including shipping, construction, mining, textiles, automotive and manufacturing; arms trade to or from Iran; and many components of Iran's government, such as Iran's Supreme Leader and the IRGC.

69.     Iran  has long sought to evade those comprehensive sanctions imposed by the United States.

70.     For example, in 2011, Ayatollah Ali Hosseini Khamenei, the supreme leader of Iran from 1989 to 2026, called for a "Year of Economic Jihad," and directed the Iranian nation to mobilize against international sanctions and "focus the major portion of its efforts on the economic arena."[31]  The next year, Iranian oil minister Rostam Qasemi asserted that "[a]ll possible options have been planned in government to counter sanctions…."[32]  And after facing renewed sanctions in 2018, Iranian foreign minister Mohammad Javad Zarif boasted that "[i]f there is an art we have perfected in Iran … it is the art of evading sanctions."[33]

71.     In recent years, Iran began utilize cryptocurrency in its evasion tactics.

---

[31] Sara Bazoobandi, *Populism, Jihad, and Economic Resistance: Studying the Political Discourse of Iran's Supreme Leader*, 32 DIG. MIDDLE E. STUD. 321, 32526 (2023).

[32] Marcus George, *Iran Pledges to Counter "Malicious" Oil Embargo*, REUTERS (July 1, 2012), https://www.reuters.com/article/business/energy/iran-pledges-to-counter-malicious-oil-embargo-idUSL6E8I106C/.

[33] AFP, *U.S. Sanctions Won't Change Iran Policies Says FM*, RADIO FARDA (Dec. 15, 2018), https://en.radiofarda.com/a/u-s-sanctions-won-t-change-iran-policies-says-fm/29658084.html.

72.    As the Congressional Research Service explained in 2019, "the Iranian government has recognized a potential role for cryptocurrencies."[34]  For example, Iran uses crypto transactions to pay for imports that cannot be processed through conventional payment systems and to compensate for revenues lost due to sanctions.  Iran's regime also uses crypto to move capital out of Iran.[35]  More simply, cryptocurrency allows Iran to facilitate cross-border settlement, to access foreign liquidity, and in many cases to support activities conducted outside the formal financial system, including operations connected to sanctioned entities or terrorism financing.

73.    Iran has developed a significant domestic cryptocurrency ecosystem to support these activities, including supporting at least fifteen cryptocurrency exchanges operate in Iran or primarily serve Iranian users.  Reporting demonstrates that the Islamic Revolutionary Guard Corps controls a significant portion of Iran's cryptocurrency exchange.[36]

74.    These exchanges are supported by a broader ecosystem that includes over-the-counter ("OTC") trading desks, payment and liquidity intermediaries, mining operations, technical infrastructure providers, and related service businesses.  Taken together, this infrastructure reflects a mature and relatively sophisticated digital asset ecosystem that allows both state-linked actors and private individuals in Iran to access cryptocurrency markets and move value internationally despite restrictions imposed by international sanctions.

---

[34] CORRIE E. CLARK & HEATHER L. GREENLEY CONG. RSCH. SERV., R45863, BITCOIN, BLOCKCHAIN, AND THE ENERGY SECTOR 16 (2019) (footnote omitted).

[35] Behnam Gholipour, *Official Report:  Iran Could Use Cryptocurrencies to Avoid Sanctions*, IRANWIRE (Mar. 2, 2021), https://iranwire.com/en/features/69084/; Jordan Major, *Iran officially plans to adopt Bitcoin mining to bypass international sanctions*, FINBOLD (Mar. 4, 2021), https://finbold.com/iran-officially-plans-to-adopt-bitcoin-mining-to-bypass-international-sanctions/ (citing the Iranian Center for Presidential Center for Strategic Studies, an official arm of the office of the Office of the President of Iran).

[36] *See* Elizabeth Howcroft & Tommy Reggiori Wilkes, *Iran's Surging Crypto Activity Draws US Scrutiny*, REUTERS (Feb. 3, 2026), https://www.reuters.com/business/finance/irans-surging-crypto-activity-draws-us-scrutiny-2026-02-03/ ("Chainalysis estimates that 50% of Iran's volumes last year were linked to the Islamic Revolutionary Guard Corps (IRGC), a powerful political, military and economic force with close ties to Supreme Leader Ayatollah Ali Khamenei.").

**D.    The Assets Held In Defendants' Wallets Are The Property of an Agency or Instrumentality of Iran.**

75.    Plaintiffs have conducted an investigation to identify cryptocurrency assets that are property of agencies or instrumentalities of Iran. They identified the TNiq Wallet as the most valuable among many wallets with evident ties to Iranian cryptocurrency exchanges and other public data indicative of ties to Iran and its agencies or instrumentalities.  Although not named in the initial complaint, Plaintiffs also identified the TTiD Wallet as having significant transactional ties to the TNiq Wallet, and identified both wallets as having significant transactional ties in close proximity to Iranian exchanges and other sanctioned and/or illicit entities.

76.    Plaintiffs commenced this action to attach and execute on assets held in a number of cryptocurrency wallets, including the TNiq Wallet.  While that action was pending, Plaintiffs became aware of increased US government scrutiny of the TNiq Wallet and the TTiD Wallet.

77.    On April 23, 2026, Tether announced that it had frozen "more than $344 million in USDT in coordination with OFAC and U.S. Law Enforcement." In its press release, Tether said that the "freeze follows information shared with Tether by several U.S. authorities about activity tied to unlawful conduct."  It continued, stating that the "wallets are identified as connected to sanctions evasion, criminal networks, or other illicit activity."[37]

78.    While Tether did not name the addresses of the wallets it froze, the wallets were the TNiq Wallet and the TTiD Wallet.

79.    On April 24, 2026, CNN published an article titled "US freezes $344 million in cryptocurrency said to be linked to Iran" discussing Tether's freeze that occurred the prior day.[38]

---

[37] *Tether Supports Freeze of More Than $344 Million in USDT in Coordination with OFAC and U.S. Law Enforcement*, TETHER (Apr. 23, 2026), https://tether.io/news/tether-supports-freeze-of-more-than-344-million-in-usdt-in-coordination-with-ofac-and-u-s-law-enforcement/.

[38] Jennifer Hansler & Sean Lyngaas, *US freezes $344 million in cryptocurrency said to be linked to Iran*, CNN (Apr. 24, 2026), https://www.cnn.com/2026/04/24/politics/us-freezes-cryptocurrency-iran.

The article said that "[t]he Trump administration has frozen $344 million in cryptocurrency it says was linked to Iran as the United States ratchets up pressure on Tehran" and quoted Treasury Secretary Scott Bessent as commenting that the Treasury Department "is sanctioning multiple wallets tied to Iran" and that the Trump Administration "will follow the money that Tehran is desperately attempting to move outside of the country and target all financial lifelines tied to the regime."[39]   The CNN article cited a U.S. Official as stating that the U.S. Government had "information linking the currency [frozen by Tether] to Iran." The Official provided a quote describing the work conducted that identified the $344 million in USDT to Iran:

> Working with blockchain analytics experts, the US government has observed evidence of material links to the Iranian regime, including confirmed transactions with Iranian exchanges and a series of transactions routed through intermediary addresses that interact with Central Bank of Iran-associated wallets[.][40]

80.     The CNN article also quoted Chainanalysis—a crypto-tracing firm—that said with regards to the wallets held by Defendant TNiQ and Defendant TTiD "[w]hen these wallets were regularly active several years ago, they engaged in frequent large transfers up to tens of millions of dollars, largely with other private wallets" which are "patterns . . . consistent with how we've observed other known IRGC wallets move funds on chain."

81.     Treasury Secretary Bessent also released a statement on X explicitly stating that the "Treasury's Office of Foreign Assets Control is sanctioning multiple wallets tied to Iran — resulting in the freeze of $344 million in cryptocurrency."[41]

---

[39] *Id.*

[40] *Id.*

[41]   Treasury Secretary Scott Bessent (@SecScottBessent), X.com (Apr. 24, 2026 at 2:15 PM), https://x.com/SecScottBessent/status/2047741124853502012?s=20.

82.    On the afternoon of April 24, 2026, the U.S. Government officially designated the TNiq Wallet and TTiD Wallet as SDNs because they were property of an agency or instrumentality of Iran.[42]

83.    On July 14, 2026, the U.S. Government officially designated the TAhw Wallet, TJdg Wallet, TXGH Wallet, and TFQb Wallet as SDNs because they were property of an agency or instrumentality of Iran. These wallets were added by OFAC as identifiers of the Central Bank of Iran alongside the TNiq Wallet and TTiD Wallet.[43]

## CLAIMS FOR RELIEF

### FIRST COUNT:
**Attachment and Execution Under §201(a) of the Terrorism Risk Insurance Act of 2002
(Against Defendants)**

84.    Plaintiffs incorporate all above paragraphs, *supra*, as if fully set forth herein.

85.    Plaintiffs are entitled to execute on, and attach in aid of execution on, Defendants' assets under TRIA § 201(a).

86.    TRIA provides that "[n]otwithstanding any other provision of law … in every case in which a person has obtained a judgment against a terrorist party on a claim based on an act of terrorism … the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in the aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable."  TRIA § 201(a).

87.    Plaintiffs satisfy every element required under TRIA.

---

[42] *See Iran-related Designations; Counter Terrorism and Iran – related Designation Update; Issuance of Iran-related General License*, OFAC (Apr. 24, 2026), https://ofac.treasury.gov/recent-actions/20260424.

[43] *See Iran-related Designations; Iran-related and Counter Terrorism Designation Update; Issuance of Iran-related General License*, OFAC (July 14, 2026), https://ofac.treasury.gov/recent-actions/20260714.

88.    *Terrorist Party*.  Iran has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405(j), beginning January 19, 1984, and therefore is a "terrorist party" as defined by TRIA, § 201(a).

89.    *Obtained Judgments*. As described above, Plaintiffs hold judgments for compensatory damages against Iran based on an act of terrorism under 28 U.S.C. § 1605A. Those judgments are registered in this District pursuant to 28 U.S.C. § 1963, and accordingly "shall have the same effect as a judgment of" a court of this District "and may be enforced in like manner."

90.    *Blocked Assets*.  Defendants' assets, including and specifically the assets held in the TNiq Wallet, TTiD Wallet, TAhw Wallet, TJdg Wallet, TXGH Wallet, and TFQb Wallet, are blocked within the meaning of TRIA § 201(a), including because of their designation as SDNs by OFAC.

91.    *Agency or Instrumentality.*  Finally OFAC has officially designated Defendants as SDNs under the Iran sanctions regime because they are agencies or instrumentalities of Iran. Additionally, .an entity qualifies as an agency or instrumentality "of a terrorist party" if it "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by the terrorist party." *Kirschenbaum I*, 830 F.3d at 135 (footnote omitted).  The Defendants are agencies or instrumentalities of Iran under both theories, each of which serves as an independent basis for attachment of the assets under TRIA.

92.    Plaintiffs are accordingly entitled to execution, and attachment in aid of execution, against the assets held in the TNiq Wallet, the TTiD Wallet, the TAhw Wallet, the TJdg Wallet, the TXGH Wallet, and the TFQb Wallet.

## SECOND COUNT:
### Execution and Turnover Pursuant to CPLR §§ 5225, 5227
### (Against Tether)

93.     Plaintiffs incorporate herein all above paragraphs, *supra*, as if fully set forth herein.

94.     Tether is in possession of money or property in which Defendants have an interest, or are indebted to or will become indebted to the Defendants.

95.     Plaintiffs' rights in that property or debt are superior to those of Tether, and Plaintiffs are entitled to possession of the money or property or debt.

96.     Pursuant to Rule 69(a) of the Federal Rules of Civil Procedure and CPLR §§ 5225(b) and 5227, Plaintiffs respectfully request that the Court enforce Plaintiffs' judgments against Iran by issuing an order conveying, assigning, and directing the payment to Plaintiffs of all rights, title, and interest of Iran, and its agencies or instrumentalities—Defendants—in the USDTs now in possession of Tether.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

    A. Issue a writ of attachment against all property of Defendants, including the USDT held at the cryptocurrency addresses belonging to Defendants;

    B. Enter judgment declaring that Defendants, and any owners of property held in wallets designated by OFAC as identifiers of CBI, are agencies and instrumentalities of Iran within the meaning of TRIA, and that the assets held in the the TNiq Wallet, TTiD Wallet, TAhw Wallet, TJdg Wallet, TXGH Wallet, and TFQb Wallet, and any crypto addresses designated by OFAC as identifiers of Defendants, or CBI, are blocked assets subject to attachment and execution under TRIA;

34

C.  Issue a writ of execution against all blocked property of Defendants, including the USDT held at the cryptocurrency addresses belonging to Defendants (including any crypto addresses designated by OFAC as identifiers of CBI);

D.  Enter an order directing Tether to turn over all blocked property of Defendants, including the Tether USDT stablecoins, held in the TNiq Wallet, TTiD Wallet, TAhw Wallet, TJdg Wallet, TXGH Wallet, TFQb Wallet, and any crypto addresses designated by OFAC as identifiers of Defendants, or CBI, including by burning and re-minting the same;

E.  Award Plaintiffs other and further relief the Court deems just and proper.

WILLKIE FARR & GALLAGHER LLP

Dated: July 16, 2026          By:      /s/ Aaron E. Nathan


Michael J. Gottlieb
Willkie Farr & Gallagher LLP
2029 Century Park East
Los Angeles, CA 90067
(310) 855-3000
mgottlieb@willkie.com

Nicholas Reddick (admitted *pro hac vice*)
Willkie Farr & Gallagher LLP
333 Bush St.
San Francisco, CA 94104
(415) 858-7400
nreddick@willkie.com

Lee S. Wolosky
Aaron E. Nathan
Willkie Farr & Gallagher LLP
787 Seventh Ave
New York, NY 10019
(212) 728-8000
lwolosky@willkie.com
anathan@willkie.com

*Counsel for Plaintiffs*

36