**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**FREDERICK C. BENSON, et al.,**
Plaintiffs,

-v-

**ISLAMIC REPUBLIC OF IRAN, et al.,**
Defendants.

**Case No. 1:26-cv-02327-MMG**

**MEMORANDUM OF LAW**

# MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR LEWIS MAFWAVO MALOBA'S PRO SE MOTION TO INTERVENE

## PRELIMINARY STATEMENT

Lewis Mafwavo Maloba seeks limited intervention in an existing enforcement action concerning a finite pool of Iran-linked digital assets. He holds a federal terrorism judgment against the Islamic Republic of Iran, IRGC, and MOIS arising from the 1998 Nairobi embassy bombing. The July 25, 2014 Wamai damages schedule awards Maloba $5,000,000 in compensatory solatium damages, states a subtotal of $11,309,250 with applicable prejudgment interest, awards $11,309,250 in punitive damages, and states a total award of $22,618,500. That judgment was registered in this District on July 29, 2014 in Wamai v. Republic of Sudan, No. 14-mc-00232. The Wamai court later entered an order under 28 U.S.C. § 1610(c) and, on June 29, 2026, revived the judgment for another twelve years.

Maloba does not seek immediate attachment, execution, turnover, or a ruling on priority. He asks to participate before the subject assets are finally allocated, released, settled, or distributed. He accepts the existing Benson attachment, levy, service orders, record, and schedule and does not seek to reopen completed proceedings.

The requested intervention is also narrower than the ultimate enforcement question. Maloba participated in six USVSST distribution rounds. The six rounds from USVSST total $963,172.96, and those notices supply the provisional Fund calculation. The private Sudan

settlement totals $264,000.08.. Maloba acknowledges the statutory subrogation required by 34 U.S.C. § 20144(d)(5)(A), will not seek double recovery, and will provide a reconciled ledger before requesting any distribution. Intervention does not create a writ or levy, establish priority, or decide the amount presently available for execution.

**BACKGROUND**

**A. Maloba's Registered Wamai Judgment**

Maloba was a child when his father was killed in the August 7, 1998 Nairobi embassy bombing. He later became a plaintiff in Wamai v. Republic of Sudan, No. 08-cv-01349 (JDB). On July 25, 2014, the District Court for the District of Columbia entered judgment against, among others, Iran, IRGC, and MOIS. Maloba's award schedule lists $5,000,000 in solatium damages, a compensatory subtotal with applicable prejudgment interest of $11,309,250, punitive damages of $11,309,250, and a total award of $22,618,500. See Maloba Decl. Ex. A.

The judgment was registered in this District on July 29, 2014 under 28 U.S.C. § 1963 in No. 14-mc-00232. See Maloba Decl. Ex. B. Section 1963 gives a registered judgment the same effect as a judgment of the registering district and permits enforcement in like manner.

Following diplomatic service of the Wamai judgment on the Iran defendants, the District of Columbia court entered an order on April 19, 2016 finding that plaintiffs had given defendants proper notice of the July 25, 2014 judgment, that a reasonable period had elapsed, and that plaintiffs were entitled to enforce the judgment against defendants in a manner consistent with 28 U.S.C. § 1610 and other applicable law. Wamai v. Republic of Sudan, No. 08-cv-01349 (JDB) (D.D.C.), ECF No. 285. See Maloba Decl. Ex. C.

On June 29, 2026, the Wamai court granted the plaintiffs' motion to revive the judgment and extended the July 25, 2014 judgment for another twelve years. The docket entry for the June 24, 2026 revival motion identifies it as filed by ALL PLAINTIFFS. The revival opinion

identifies the Islamic Republic of Iran, IRGC, and MOIS collectively as the remaining Iranian defendants after the Sudan judgment was vacated on April 6, 2022, and expressly takes no position on the total outstanding judgment amount, including whether the U.S.-Sudan settlement offsets Iran's liability. Wamai v. Republic of Sudan, No. 08-cv-01349 (JDB) (D.D.C.), ECF No. 307. See Maloba Decl. Ex. D.

Maloba participated in six USVSST distribution rounds and received a separate Sudan-related payment. The six official USVSST notices total $963,172.96; the Sudan form is not used for that calculation and supplies only the separately stated gross Sudan settlement amount of $264,000.08. Under 34 U.S.C. § 20144(d)(5)(A), the United States is subrogated only to the extent and amount of Fund payments, while subsection (d)(5)(B) preserves rights in unpaid amounts. Section 20144(j)(6) excludes qualifying international-claims-agreement payments and other Sudan terrorism settlements from the statute's definition of a "source other than this Fund." Maloba therefore does not concede an automatic Iran-side offset from the Sudan payment and will provide a reconciled ledger before seeking distribution.

**B. The Benson Asset Proceedings**

The Benson plaintiffs are judgment creditors pursuing Iran-linked digital assets under TRIA. On July 16, 2026, the Court granted leave to file the Second Amended Complaint (ECF No. 77), extended the existing levy (ECF No. 78), confirmed the Order of Attachment (ECF No. 79), and the Second Amended Complaint was filed at ECF No. 80. The docket materials reviewed by Maloba reflect service on the six Doe wallet defendants at ECF No. 93, with responses due September 17, 2026.

Maloba contacted attorneys representing existing judgment creditors concerning these assets. They did not agree to represent him or add him as a client. No existing party is authorized

to compromise his judgment, stipulate his remaining balance or credits, or determine his priority or allocation.

**LEGAL STANDARD**

Rule 24(a)(2) requires intervention on a timely motion when the applicant claims an interest relating to the property or transaction at issue, disposition may practically impair that interest, and existing parties do not adequately represent it. Fed. R. Civ. P. 24(a)(2); MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389-90 (2d Cir. 2006). Rule 24(b)(1)(B) separately permits intervention where the proposed intervenor's claim shares a common question of law or fact, provided intervention will not unduly delay or prejudice adjudication. Fed. R. Civ. P. 24(b)(1)(B), (b)(3); United States v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir. 1994).

**ARGUMENT**

**I. MALOBA SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT.**

**A. The Motion Is Timely.**

Maloba moves before the Doe defendants' response date and before any final turnover, allocation, or distribution reflected in the docket materials he reviewed. After learning of the Benson asset proceedings, he promptly contacted counsel representing existing judgment creditors to ask whether they would represent or include him; they declined. He then prepared this motion pro se without seeking to undo the attachment, disturb the levy, redo completed service, or delay the existing schedule. On the present record, the period between his learning of the specific Benson asset proceeding, attempting to obtain representation, and moving to intervene is short; that diligence materially reduces any timeliness concern under MasterCard's first factor.

Peterson v. Islamic Republic of Iran, 290 F.R.D. 54 (S.D.N.Y. 2013), permitted competing Iran judgment creditors to intervene but cautioned against treating intervention as an

invitation to later-arriving creditors. Id. at 57-60. Maloba does not rely on Peterson to excuse delay or to establish priority. He relies on the narrower point that Rule 24 can permit a competing terrorism judgment creditor to be heard before a finite execution fund is distributed, while priority and ultimate entitlement remain for later adjudication. He moves at that pre-distribution stage and accepts the case as it stands.

**B. Maloba Has Article III Standing and a Direct, Protectable Interest.**

To the extent Maloba seeks relief in his own name, he satisfies Town of Chester v. Laroe Estates, Inc., 581 U.S. 433, 439-40 (2017). His partially unsatisfied federal judgment is a concrete injury; the injury is traceable to the Iranian judgment debtors' nonpayment; and lawful execution against qualifying assets, if ultimately authorized, would partially redress it.

His Rule 24 interest is also specific rather than generalized. The Wamai judgment is registered in this District, and Maloba asserts that the same identified asset pool already before the Court may be legally available to satisfy part of that judgment. XL Specialty Insurance Co. v. Lakian, 632 F. App'x 667, 669-70 (2d Cir. 2015), supports intervention where judgment creditors assert a nonfrivolous claim to a specific fund without requiring the court to resolve ultimate entitlement at the intervention threshold.

**C. Disposition Without Maloba May Impair His Interest.**

The subject assets are finite, and attachable Iran-linked assets available to satisfy terrorism judgments are practically scarce. A final turnover, settlement, release, priority ruling, allocation, or distribution could therefore exhaust or materially encumber a uniquely valuable enforcement opportunity before Maloba is heard. Rule 24(a)(2) addresses that practical risk. Peterson likewise recognized impairment where competing terrorism creditors sought the same finite execution proceeds. 290 F.R.D. at 58-60.

**D. Existing Parties Do Not Adequately Represent Maloba.**

The existing plaintiffs and Maloba share an interest in establishing that qualifying Iran-linked assets may be executed upon, but their interests diverge when the question becomes priority and allocation. Every dollar allocated to another creditor may reduce the finite pool available to Maloba. Existing counsel declined to represent him and have no authority to compromise his judgment, concede credits, or bind him on priority.

Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179-80 (2d Cir. 2001), applies a more demanding inadequacy showing where an intervenor and an existing party share the same ultimate objective. Even assuming that presumption applies at the asset-eligibility stage, it is overcome here by adversity on allocation and priority. This is not criticism of existing counsel; it is the ordinary structural divergence among creditors competing for a limited fund.

**II. ALTERNATIVELY, PERMISSIVE AND LIMITED INTERVENTION IS APPROPRIATE.**

Maloba's claim shares the central questions already before the Court: whether the subject digital assets are property of Iran or an Iranian agency or instrumentality, whether they are blocked assets within TRIA, and what enforcement process is available. Fed. R. Civ. P. 24(b)(1)(B). Intervention can be conditioned to avoid duplication: Maloba accepts prior attachment, levy, preservation, service, and case-management orders; will not reopen completed proceedings merely because he intervenes; and will address only issues affecting his own judgment or creditor position. That limited participation will not unduly delay or prejudice the existing action. See Pitney Bowes, 25 F.3d at 73.

**III. THE WAMAI COURT HAS ALREADY ENTERED A § 1610(c) ORDER; PRIORITY, WRIT/LEVY, AND AMOUNT REMAIN FOR LATER.**

Section 1610(c) requires a court determination that a reasonable period has elapsed after entry of judgment and the notice required by § 1608(e) before the attachment or execution described in § 1610(a) or (b). That predicate was addressed in Wamai. On April 19, 2016, Judge Bates expressly found that the plaintiffs had given defendants proper notice of the July 25, 2014 judgment, that the Iran defendants had been served with the final judgment on January 31, 2016, and that a reasonable period had elapsed. The court therefore ordered that the plaintiffs were entitled to enforce the judgment against defendants in any manner consistent with § 1610 and other applicable law. Wamai v. Republic of Sudan, No. 08-cv-01349 (JDB) (D.D.C.), ECF No. 285; Maloba Decl. Ex. C. Maloba thus does not rely on intervention as a substitute for § 1610(c). He also does not contend that the Wamai order itself creates a Benson writ or levy, determines creditor priority, or authorizes immediate turnover in his favor. If this Court concludes that a separate or duplicative § 1610(c) determination should be made in the execution court with respect to these proceedings, Maloba will promptly seek that determination. Any separate writ, delivery, levy, Rule 69, New York enforcement, asset-specific, or other execution requirement can likewise be addressed before such relief is requested.

The amount is likewise reserved. The Wamai schedule awards Maloba $5,000,000 in compensatory solatium damages, states a subtotal of $11,309,250 with applicable prejudgment interest, awards $11,309,250 in punitive damages, and states a total award of $22,618,500. TRIA § 201(a) permits execution against qualifying blocked assets only to the extent of compensatory damages. Maloba therefore reserves whether the $6,309,250 prejudgment-interest component is reachable under TRIA and does not seek punitive-damages execution from the Benson assets. The six official USVSST Round 1-6 notices total $963,172.96; using those notice amounts

provisionally leaves $4,036,827.04 of the $5,000,000 compensatory base before any other legally required credit. The separate Sudan form is used only for its $264,000.08 Gross Settlement amount, and the June 29, 2026 revival order left open whether that settlement offsets Iran's liability. Wamai v. Republic of Sudan, No. 08-cv-01349 (JDB) (D.D.C.), ECF No. 307; Maloba Decl. Ex. D. A reconciled ledger will establish the legally unpaid amount before any distribution.

## IV. THE COURT CAN DIRECT ANY ADDITIONAL SERVICE AFTER INTERVENTION.

Rule 24(c) requires service of the intervention motion under Rule 5 and an accompanying pleading. ECF docketing provides Rule 5 service on represented parties to the extent provided by SDNY's ECF rules. If a pleading asserting Maloba's claim must be served on a nonappearing Iranian defendant under Rule 5(a)(2), Rule 4(j)(1), or 28 U.S.C. § 1608, Maloba asks the Court to direct the timing and manner of that service. As to the Doe wallet defendants, ECF No. 68 already provides an alternative-service mechanism; Maloba asks that the Court permit that mechanism to be used for his papers if additional service is required. He does not ask the Court to deem any unperformed service complete.

## CONCLUSION

For these reasons, Maloba respectfully requests intervention as of right under Rule 24(a)(2), or alternatively permissive and limited intervention under Rule 24(b)(1)(B); acceptance of the Proposed Intervenor Complaint; participation in proceedings affecting the subject assets without disturbing completed proceedings; direction concerning any additional service; recognition that the Wamai record includes the April 19, 2016 § 1610(c) order; and reservation of the exact amount, statutory subrogation and credits, any separate writ or levy, priority, and final execution or turnover for later adjudication.

Dated: August 18, 2026

Nairobi, Kenya



LEWIS MAFWAVO MALOBA

Proposed Intervenor, Pro Se

P.O. Box 1373-00515

Nairobi, Kenya

malobalewis@gmail.com

+254 710 398 142

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum contains 2,253 words, as counted from the substantive memorandum text, excluding the caption, signature block, and this certificate, and is within the applicable 8,750-word limit.

Dated: August 18, 2026

Nairobi, Kenya